**STATE of Tennessee, Appellee,**

v.

**Ricky James McBEE and Michael McBee, Appellants.**

Court of Criminal Appeals of Tennessee, at Knoxville.

Sept. 30, 1982.

Permission to Appeal Denied by Supreme Court Dec. 30, 1982.

William M. Leech, Jr., Atty. Gen., Wayne E. Uhl, Asst. Atty. Gen., Nashville, James R. Dedrick and David G. Dake, Asst. Dist. Attys. Gen., Knoxville, for appellee.

Gail S. Harris, Knoxville, for appellant Ricky McBee.

Mark E. Stephens, Knoxville, for appellant Michael McBee.

## OPINION

CORNELIUS, Judge.

Ricky James McBee and Michael Eugene McBee were convicted in a joint jury trial. Ricky McBee was found guilty of rape upon Angela Bolin and sentenced to imprisonment for twenty years. He was also convicted of assault and battery upon William Mitchell with punishment being fixed at eleven months and twenty-nine days to be served at the expiration of the rape sentence. Michael McBee was found guilty of aiding and abetting the rape with his punishment being fixed at five years in the penitentiary. Both defendants appeal. The judgment for each defendant is affirmed for the reasons set forth in this opinion.

Ricky McBee does not contest the sufficiency of the State's convicting evidence but a brief review is in order to dispose of other issues.

The McBee and Mitchell families, of Knoxville, have been life-long acquaintances. The children, growing up, attended the same schools and later worked together. There was "bad blood" between certain male members of the families.

During the early evening Saturday October 25, 1980, the Mitchell family, consisting of Fred, Rocky, Robert, Patsy, Connie, Dennis and William, with his live-in girlfriend Angela Bolin, were having dinner at their parents' home. After dinner, as William, Angela and Robert were leaving, with the intention of dropping Robert Mitchell off at his girlfriend's home, they met Fred Mitchell and Ricky McBee at William's automobile. Fred asked William if he would take Ricky McBee home. William agreed and McBee entered the vehicle and took the back seat behind William. McBee gave William directions which led to Spring Road, which runs into a dark dead end. McBee told William to stop and suddenly pulled a knife which he placed at William's throat. William reached for the knife to shield his throat. During the struggle Ricky McBee got out of the car. Simultaneously as William tried to drive on, he observed Michael McBee approaching with the shaft of a bumper jack, then the automobile window shattered. William, Angela and Robert exited their vehicle which rolled partially off the gravel road. William and Robert ran from the scene to nearby residences for help. William called the police and Robert called his family.

Angela noticed the vehicle rolling so she jumped back in to stop it and attempt to get it going again. The automobile came to rest partially in a wooded area. Being unable to get it started, she walked to the end of the road looking for her companions. She was approached by Ricky McBee, Michael McBee and Pooter Houser. Michael was holding the shaft of the bumper jack. Ricky McBee placed his arms around her saying he would like to have her. They offered to help get her automobile started. When she re-entered the driver's seat Ricky McBee pushed her down across the seat and ordered her to take her clothes off. Ricky McBee inserted his penis in her vagina. As Ricky proceeded to rape her, Michael McBee and Houser stood by the door making comments relative to the rape.

Meanwhile, Officer Gentry, of the Knoxville Police Department, was dispatched to

the scene in response to William Mitchell's call. He met William at the entrance to Spring Road, saw his condition, received a quick briefing and pulled his police cruiser behind the Mitchell vehicle illuminating it with his headlights and spotlight. Gentry recognized Ricky McBee whom he knew from prior contacts as he "cleared the door of the station wagon" and ran into the woods. He also saw a partially nude female laying in the front seat. Gentry and Officer Knight, who had arrived as "back-up", then proceeded into the woods after Ricky McBee. In the dark and growth they were unable to apprehend McBee and as they returned to the cars, observed a light blue 1965 Buick across from the Mitchell vehicle. A registration check revealed this automobile was listed to Pooter Houser's sister.

William Mitchell and Angela Bolin were taken to the University of Tennessee Hospital for treatment. Dr. Harold Lynn Massengill testified for the State. As Emergency Physician on duty at the hospital Dr. Massengill observed Angela Bolin from approximately 9:30 p.m. until 10:30 p.m. October 25, 1980. He found small lacerations on her right hand consistent as having been inflicted by broken glass. In keeping with routine, a "rape kit" was prepared, however, no male sperm was detected. This was not unusual in his experience as a large number of rapists are considered to be "sexually disfunctional." It was his "impression" based on the history given by Ms. Bolin, her demeanor and manner that she had told the truth as to having been raped.

The next day, October 26, 1980, Ms. Bolin signed a warrant for the arrest of Ricky McBee. James W. Winston, a detective for the Knoxville Police Department testified that an unsuccessful effort was made to arrest Ricky McBee and then a "pick-up" was issued for him. In February, 1981, Ricky McBee was arrested in Tampa, Florida and returned to Tennessee for prosecution. On February 26, 1981, Ricky McBee, Michael McBee and Robert (Pooter) Houser were indicted by the Knox County Grand Jury.

At the trial Ricky McBee took the witness stand in his own defense and claimed that he was attacked by William and Robert Mitchell and acted in self-defense in escaping. He denied raping Angela Bolin. Michael McBee did not offer any proof. Robert Houser was not before the trial court.

■ Ricky McBee's first issue is that the trial court erred in not honoring his pre-trial motion for a new preliminary hearing. The motion was filed September 23, 1981, alleging that the electronic recording of the original preliminary hearing, held in the Knox County General Sessions Court on February 10, 1981, was blank. Counsel for Ricky McBee claimed that since she was not his attorney of record at the time of the original preliminary hearing, she had no first-hand knowledge of the evidence presented.

This issue must be considered in the context that defense counsel had previously, on June 9, 1981, filed an extensive motion for discovery and inspection. An examination of the record and appellant's brief fails to establish any prejudice to the defense, or demonstrate how the reinactment of the preliminary hearing could have aided the defense in the subsequent trial. Officer Gentry's testimony supports the victim's testimony to such an extent that the evidence of Ricky McBee's guilt is overwhelming. The circumstances of the instant case are analogous to the facts in the opinion by Judge Daughtrey in *State v. Butts,* Tenn. Cr.App., 640 S.W.2d 37, filed at Knoxville, February 24, 1982. The *Butts* holding was that the Rule 5.1, Tennessee Rules of Criminal Procedure, problem produced what was at most harmless error. See also the teaching of *State v. Willoughby,* 594 S.W.2d 388, 390 (Tenn.1980) discussing *Waugh v. State,* 564 S.W.2d 654 (Tenn.1978).

■ Ricky McBee's second issue complains that the trial court allowed a State witness to testify who was not listed on the indictment. No contemporaneous objection was raised to Dr. Massengill's appearance as a witness. Without contemporaneous objection, the error, if any, is waived.

*State v. Pritchett,* 621 S.W.2d 127, 135 (Tenn.1981) rehearing denied 1981. See Rule 36(a), T.R.A.P. Also see [5–7] *Aldridge v. State,* 4 Tenn.Cr.App. 254, 470 S.W.2d 42, 46 (1971) cert. denied 1971.

Ricky McBee's final issue alleges improper argument by the Assistant District Attorney. There was no contemporaneous objection to this argument, therefore, this issue is controlled by Rule 36(a), T.R.A.P. and *Anglin v. State,* 553 S.W.2d 616, 622 (Tenn.Cr.App.1977) cert. denied 1977. Moreover, to justify a reversal on the ground of improper argument of counsel, it must affirmatively appear that the improper conduct affected the verdict to the prejudice of the defendant. *Anglin v. State,* supra. Considering the strength of the case against Ricky McBee, the argument complained of did not excite the jury and affect the verdict since it was for a lesser offense than that charged in the indictment.

Michael McBee's first issue on appeal is that the evidence as to him was insufficient to support the jury's verdict. He asserts that the testimony of Angela Bolin was insufficient to establish beyond a reasonable doubt that he was present at the crime scene. In the argument portion of his brief it is stated:

"Assuming, for the purposes of argument, the Defendant did smash the window of the car, this would still not support a finding that this action was in aid of the commission of the rape. The rape did not occur until after Bill and Robert Mitchell had left the scene, and after the victim, Angela Bolin, had left the scene and returned. It may have been in aid of the assault, but the smashing of the window had nothing to do with the subsequent rape.

Under Tennessee law, an aider and abettor is one who is 'present, aiding and abetting, or ready and consenting to aid and abet, in any criminal offense. T.C.A. § 39–109.'"

There is ample evidence to support the jury finding Michael McBee to have been at the crime scene. William Mitchell testified that at the time Ricky McBee got out of the car

"Mike and Pooter walks up." Mitchell was explicit that Michael McBee broke out the window with the shaft of the bumper jack. Robert Mitchell testified he saw "Mike" running up. He was approaching from the direction of a blue and white Buick parked some eight to ten yards away. Angela Bolin testified there were three men at the scene who returned with her to the automobile. She identified the person of Ricky and Michael as two of the three men.

As to evidence of Michael McBee aiding and abetting the rape offense, Angela Bolin testified, the two men stood by the car door and "they would, uh—were just telling him (Ricky) that it looked good and they—for him to hurry up." This evidence was placed in the record several questions before counsel moved that the witness be required to clarify what statements came from what individual. The court observed that the point was well taken and the State was later unable to establish that Ricky was warned by Michael of the approach of car lights.

A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State. *State v. Hatchett,* 560 S.W.2d 627, 630 (Tenn.1978). On appeal, the State is entitled to the strongest legitimate view of the trial evidence and all reasonable or legitimate inferences which may be drawn therefrom. *State v. Cabbage,* 571 S.W.2d 832, 835 (Tenn.1978). Aiding and abetting as used in the criminal law means to assist the perpetrator of the crime. 22 C.J.S. Criminal Law § 88(2) pages 261–262. No particular acts are necessary, nor is it necessary that any physical part in the commission of the crime be taken; mere encouragement is enough. 22 C.J.S. Criminal Law § 88(2) page 264. The presence of one at the commission of a felony by another is evidence to be considered in determining whether or not he is guilty of aiding or abetting; and it has also been held that presence, companionship, and conduct before and after the offense are circumstances from which one's participation in the

criminal intent may be inferred. 22 C.J.S. Criminal Law § 88(2) pages 266–267.

 It cannot be said that the evidence is insufficient to support the findings by the trier of fact that Ricky McBee was guilty beyond a reasonable doubt of rape and that Michael McBee was guilty beyond a reasonable doubt of aiding and abetting in the offense. Rule 13(e), T.R.A.P.

 Michael McBee's second and final issue complains of the trial court's cautionary jury instruction relative to a defendant's privilege to choose not to testify. Over defendant's objection the trial court gave the following instructions:

"You are to draw no inference and you are to place no emphasis whatsoever upon the fact that the defendant, Michael McBee, did not testify, as that is his right. The defendants are presumed to be innocent and that presumption stands in their favor regardless of whether they testify or not, as the law casts the burden upon the State to prove the defendants' guilt beyond a reasonable doubt; and, this burden rests upon the State irrespective of whether or not the defendants testify."

Michael McBee's complaint is in point with the background situation at the trial court level of *Lakeside v. Oregon,* 435 U.S. 333, 98 S.Ct. 1091, 55 L.Ed.2d 319. The Oregon Court of Appeals reversed but the Oregon Supreme Court reinstated the conviction. Lakeside then sought and obtained review by the Supreme Court of the United States which resolved the issue as follows:

"The petitioner's argument would require indulgence in two very doubtful assumptions: First, that the jurors have not noticed that the defendant did not testify and will not, therefore, draw adverse inferences on their own; second, that the jurors will totally disregard the instruction, and affirmatively give weight to what they have been told not to consider at all. Federal constitutional law cannot rest on speculative assumptions so dubious as these.

Moreover, even if the petitioner's simile be accepted, it does not follow that the cautionary instruction in these circumstances violates the privilege against compulsory self-incrimination. The very purpose of a jury charge is to flag the jurors' attention to concepts that must not be misunderstood, such as reasonable doubt and burden of proof. To instruct them in the meaning of the privilege against compulsory self-incrimination is no different.

It may be wise for a trial judge not to give such a cautionary instruction over a defendant's objection. And each State is, of course, free to forbid its trial judges from doing so as a matter of state law. We hold only that the giving of such an instruction over the defendant's objection does not violate the privilege against compulsory self-incrimination guaranteed by the Fifth and Fourteenth Amendments."

In the instant case one defendant testified and the other did not. Under the circumstances it was appropriate that the jury be so instructed. Considering the whole record, error, if any, did not involve a substantial right [which] more probably than not affected the judgment or resulted in prejudice to the judicial process. Rule 36(a), T.R.A.P.

The judgment below is affirmed.

O'BRIEN and SCOTT, JJ., concur.