IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

AT KNOXVILLE

DECEMBER 1994 SESSION


FILED

June 19, 1997

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| STATE OF TENNESSEE, | ) | |
| | ) | |
| Appellee, | ) | No. 03C01-9404-CR-00141 |
| | ) | |
| | ) | Blount County |
| v. | ) | |
| | ) | Honorable Kelly Thomas, Jr., Judge |
| | ) | |
| FRANK WHITMORE, | ) | (First degree murder) |
| | ) | |
| Appellant. | ) | |

For the Appellant:                    For the Appellee:

Gerald C. Russell                     Charles W. Burson
125 E. Broadway Avenue                Attorney General of Tennessee
Maryville, TN 37804                          and
                                      Sharon S. Selby
                                      Assistant Attorney General of Tennessee
                                      450 James Robertson Parkway
                                      Nashville, TN 37243-0493

                                      Michael L. Flynn
                                      District Attorney General
                                             and
                                      Edward P. Bailey, Jr.
                                      Assistant District Attorney General
                                      Blount County Courthouse
                                      Maryville, TN 37801

OPINION FILED:_____

AFFIRMED

Joseph M. Tipton
Judge

## **O P I N I O N**

The defendant, Frank Whitmore, appeals as of right from a jury conviction in the Circuit Court of Blount County for first degree murder.[1] Although the state sought the death penalty, the defendant was sentenced to life imprisonment in the custody of the Department of Correction. He presents the following issues for review:

> (1) whether the evidence is sufficient to support the conviction of first degree murder,
>
> (2) whether the trial court erred by not requiring the state to elect under which theory of first degree murder it would seek a conviction,
>
> (3) whether the trial court erred by instructing the jury relative to the elements of felony murder and criminal responsibility for felony murder, and
>
> (4) whether the trial court erred by denying the defendant's special requests for various jury instructions and by improperly instructing the jury regarding lesser included and lesser grade offenses.

We hold that the evidence is sufficient and that the trial court did not commit reversible error. Therefore, we affirm the trial court's judgment of conviction.

On August 11, 1991, William Pyott, an eighty-year-old neighbor of the defendant's grandparents, was found dead in his home. He had been stabbed a total of thirteen times in the neck and the chest.

Hazel Chapman, a neighbor of the victim, testified that on the night of the murder she was awakened at approximately 1:30 a.m. by the growling and the barking of her dogs. She said that she looked outside the window but could not see the victim's house because of the trees. Ms. Chapman stated that she was awakened later by her dogs because they were barking and running in the direction of the victim's house.

---

[1] The defendant was also convicted of aggravated burglary, a Class C felony, and theft under $500.00, a Class A misdemeanor. As a Range I, standard offender, he received concurrent sentences of six years and eleven months and twenty-nine days, respectively. He does not raise any challenges regarding these convictions.

James Long, who lives approximately a half mile from the victim, testified that when he was driving a friend of his daughter's to her house around 12:30 a.m., he saw the defendant walking with a short, stocky man.

David Maples, a deputy for the Blount County Sheriff's Department, responded to a dispatch of a possible burglary at the victim's house. He testified that the front door was open and damaged. The screen door was hanging on hinges and the glass from the screen door was leaning against a wall. After he entered the residence, he found the victim lying in the hall surrounded by blood. Officer Maples stated that there was a trail of blood coming from the bedroom to the hallway and that a closet door at the end of the hallway was open.

Gary Hamilton, a Blount County Crime Scene Technician and Fingerprint Examiner, assisted in the investigation. He testified that he discovered fingerprints on the exterior side of the screen door matching that of the defendant. A blood trail fourteen feet two inches long extended from the blood-covered bed to the hallway where the victim was found. Officer Hamilton expressed the belief that the victim got out of the bed after being stabbed and dragged himself into the hall. The telephone in the den was off the hook. Officer Hamilton stated that a fingerprint found on the linoleum underneath the bed came from the defendant. He also said that he found a trunk in another bedroom that appeared to have been tampered with due to damage to the lid. Officer Hamilton testified that he found no blood on the defendant's clothes.

Detective Randall Mercks of the Blount County Sheriff's Department similarly described the scene during his testimony. He added that he discovered one thousand four hundred dollars between the mattress and box springs of the victim's bed and a note indicating that he had given the defendant twenty-five dollars on August 10, 1991. Detective Mercks stated that he and Detective Jim Widener jointly questioned

3

the defendant and Coy Dean Williams[2] regarding their involvement in the victim's murder.

In a joint confession, the defendant and Williams agreed that the following events occurred. The defendant said that he called the victim around 6:00 p.m. and asked him to borrow some money. The victim agreed, and the defendant and Williams drove to the victim's home. According to the defendant, the victim asked the defendant to come inside and gave him twenty-five dollars. While the defendant was talking to the victim, Williams went into a bedroom and took twenty dollars and a gold watch. Williams told the officers that he opened the trunk and searched for a gun. Finding no gun, Williams instead took some silver coins and placed them in his pocket. The two then left the victim's home and drove to Knoxville to purchase two quails, each containing a quarter gram of cocaine, with the money.

The statement further reflects that later that night, the defendant and Williams decided to go back to the victim's home to steal the victim's guns or money to purchase more drugs. The defendant told Williams that the victim kept his guns in a suitcase. Both the defendant and Williams asserted that their plan was not to hurt the victim but only to scare him. They drove by the victim's home several times until all of the lights were turned off. On the first attempt, the defendant and Williams got out of the car, walked to the back door, but returned to the car after finding the door locked and hearing the victim talking on the telephone. The defendant told the officers that he became paranoid when dogs started barking, so they went to a store and waited for thirty minutes, gathering themselves to go back to the house. Seeing that all of the lights were out, they parked the car. Before they left the car, Williams reached over to take the defendant's knife from the dash near the speedometer where the defendant kept it and placed it in his pocket. Then, they walked to the house. When the

---

[2] Williams pled guilty to first degree murder, aggravated burglary and misdemeanor theft, receiving an effective sentence of life imprisonment.

4

defendant could not open the screen door to the house, Williams yanked it open and kicked in the door.

The defendant and Williams stated that they entered the dark house as the victim was coming towards the hallway carrying a flashlight. Williams said that he grabbed the victim and placed his hand over his mouth, intending to put him on the bed but not to hurt him. Williams stated that the victim grabbed him by the hair and the pants as they wrestled on the bed. Regarding the exact time that he removed the knife from his pocket, Williams made contradictory statements. First, he stated that he pulled the knife from his pocket before the victim grabbed his hair and pants and held it to the victim's neck, telling him to be quiet and not to move. Williams later claimed that he withdrew the knife when the victim grabbed him by the hair. He also stated that because the victim would not let him leave and because he "had no choice," he stabbed the victim.

Meanwhile, the defendant went to the other bedroom and ripped the trunk open and grabbed a money bag containing forty-two dollars. The defendant told the officers that he heard the victim moaning when he stepped inside the bedroom to tell Williams that they were leaving. The defendant said that he went outside but came back into the bedroom after he noticed that Williams had not followed him. As he entered the bedroom, the defendant saw a flashlight shining underneath the bed. The defendant said that he crawled on the floor and reached under the bed to get the flashlight. As he turned the flashlight off, the defendant saw blood, panicked and ran out the door. Williams ran outside behind the defendant.

The defendant asserted in the statement to the police that after getting in the car, Williams told him that he killed the victim. According to the defendant and Williams, the defendant became hysterical, and Williams had to scream at the

5

defendant to get him to calm down.  They then drove to Old Maryville Pike to dispose of the flashlight.  The defendant said that he gave Williams one of his T-shirts to wipe off any fingerprints on the flashlight before they threw it out the window.  On the way back to Knoxville, Williams wiped the blood off the knife and threw it out also.  Afterwards, the defendant stated that they counted the money and decided to buy two more quails, a quarter gram of cocaine apiece, with the forty-two dollars.  They wiped the blood off Williams with a blue wash rag and went to see Williams' girlfriend.  While at her residence, they burned the money bag.  Later, the defendant took his jeans and shirts to the dumpsters behind the shopping center and threw the blue rag in a ditch as he was driving away.

On August 12, 1991, the defendant showed the officers where he hid the items used during the murder.  The officers recovered all of the items except the flashlight.

Dr. William Elliot conducted the autopsy of the victim.  He testified that the victim was an extremely slender man who was approximately four feet six inches tall. Dr. Elliot stated that he found a total of thirteen cuts and stab wounds to the victim's neck and chest.  Three of the stab wounds perforated the victim's lungs.  Dr. Elliot expressed the opinion that the neck wounds probably occurred first.  According to Dr. Elliot, the victim did not die quickly and his death was caused by a combination of the inability to breathe and blood loss from the wounds.

## I.  SUFFICIENCY OF THE EVIDENCE

The defendant contends that the evidence was insufficient to prove beyond a reasonable doubt his guilt for the offense of first degree murder.  The defendant was charged with first degree premeditated murder and felony murder in separate counts of the indictment.  The jury returned guilty verdicts on each count, and

6

the trial court merged them into one judgment of conviction for first degree murder. On appeal, the defendant challenges the sufficiency of the evidence for the jury's findings of guilt for both counts. The state argues that the evidence is sufficient to support the conviction of first degree murder based on either first degree premeditated murder or felony murder. We agree.

Our standard of review when the sufficiency of the evidence is questioned on appeal is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979). This means that we may not reweigh the evidence, but must presume that the jury has resolved all conflicts in the testimony and drawn all reasonable inferences from the evidence in favor of the state. See State v. Sheffield, 676 S.W.2d 542, 547 (Tenn. 1984); State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978).

## A. COUNT 1 - FIRST DEGREE PREMEDITATED AND DELIBERATE MURDER

In his first issue, the defendant challenges his first degree murder conviction on the grounds that there is insufficient evidence to show (1) that the defendant personally committed an intentional, premeditated and deliberate killing of the victim, (2) that Williams' conduct constituted an intentional, premeditated, and deliberate killing of the victim, and (3) that the defendant was criminally responsible for Williams' actions. See T.C.A. § 39-13-202(a)(1) (1991), T.C.A. § 39-11-402(2). The state does not argue that there is sufficient evidence to show that the defendant committed the offense himself, but instead asserts that the evidence supports the jury's determination of guilt beyond a reasonable doubt based on his criminal responsibility for Williams' commission of first degree premeditated and deliberate murder.

7

At the time of the offense, an unlawful, intentional, premeditated and deliberate killing of another constituted first degree murder. See T.C.A. §§ 39-13-201(a) and -202(a)(1) (1991)[3]. Our criminal code defined a deliberate act as "one performed with a cool purpose," and a premeditated act as "one done after the exercise of reflection and judgment." T.C.A. § 39-13-201(b)(1) and (2) (1991). In State v. Brown, 836 S.W.2d 530 (Tenn. 1992), our supreme court further defined deliberation as requiring some period of reflection, without passion or provocation, and concluded that the "deliberation necessary to establish first degree murder cannot be formed in an instant." Id. at 539, 543. Premeditation requires a showing of a previously formed design or intent to kill. State v. West, 844 S.W.2d 144, 147 (Tenn. 1992). The existence of the separate and distinct elements of premeditation and deliberation is a question of fact to be decided by the jury. See State v. Brown, 836 S.W.2d at 541-42. In this respect, the determination of the state of mind necessary to establish the elements of first degree murder may be shown by circumstantial evidence. State v. Brown, 836 S.W.2d at 541; State v. Burlison, 868 S.W.2d 713, 717 (Tenn. Crim. App. 1993).

The statute dealing with criminal responsibility for another person's conduct provides:

> A person is criminally responsible for an offense committed by the conduct of another if:
>
> . . .
>
> (2) Acting with intent to promote or assist the commission of the offense, or to benefit in the proceeds or results of the offense, the person solicits, directs, aids, or attempts to aid another person to commit the offense;
>
> . . .

---

[3] Pursuant to an amendment effective July 1, 1995, the statutory provision defining first degree murder was amended, purportedly deleting the requirement of deliberation. See T.C.A. § 39-13-202(a)(1) (Supp. 1996).

T.C.A. § 39-11-402(2). Our court has stated that to be criminally responsible for the acts of another, a defendant must "'in some way associate himself with the venture, act with knowledge that an offense is to be committed, and share in the criminal intent of the principal in the first degree.'" State v. Maxey, 898 S.W.2d 756, 757 (Tenn. Crim. App. 1994) (quoting Hembree v. State, 546 S.W.2d 235, 239 (Tenn. Crim. App. 1976)). In other words, the defendant must "'knowingly, voluntarily and with common intent unite with the principal offender[] in the commission of the crime.'" State v. Maxey, 898 S.W.2d at 757 (quoting State v. Foster, 755 S.W.2d 846, 848 (Tenn. Crim. App. 1988)). The requisite criminal intent may be inferred from the defendant's "presence, companionship, and conduct before and after the offense . . . ." State v. McBee, 644 S.W.2d 425, 428-29 (Tenn. Crim. App. 1982).

The proof demonstrates beyond a reasonable doubt all of the elements of first degree murder as committed by Williams. In the light most favorable to the state, the evidence reflects that Williams armed himself with the defendant's knife before entering the victim's house. Once inside the house, Williams grabbed the victim, threw him on the bed, and placed his hand over his mouth. Williams then took the knife from his pocket and held it to the victim's neck as he told him not to move. When the victim grabbed Williams by the hair and the leg without releasing him, Williams began stabbing the victim. The state argues that Williams' statement that he had no choice but to stab the victim provided a basis for the jury to infer that Williams weighed the options available, thus satisfying the element of deliberation. We agree. These circumstances sufficiently establish that Williams reflected upon his previously formed decision to kill the victim.

The proof also establishes beyond a reasonable doubt that the defendant is criminally responsible for the first degree murder committed by Williams. Although Williams asserted in his statement to the police that they only intended to scare the

9

victim, the elements dealing with mental states may be shown by circumstantial evidence. State v. Brown, 836 S.W.2d at 541; State v. Burlison, 868 S.W.2d at 717. In this regard, the defendant's conduct before the murder supports a determination that the defendant is criminally responsible for Williams' conduct. See State v. McBee, 644 S.W.2d at 428-29. The defendant agreed with Williams to burglarize the victim's home so they could purchase more drugs. He provided the transportation and drove by the victim's house several times, waiting for the victim to turn off the lights. In fact, the defendant and Williams retreated after the first try because they heard the victim inside talking on the telephone. Thus, both the defendant and Williams knew that the victim would be inside the house. The defendant also provided Williams with the murder weapon. Williams told the officers that although he did not get the knife directly from the defendant, he did take the defendant's knife from the dash before they left the car and placed it in his pocket. From this statement, the jury could properly infer that the defendant knew that Williams armed himself with a weapon before entering the victim's house because Williams had to reach across to the driver's side to get the knife. Moreover, the defendant actively participated in the burglary.

The jury also could have inferred from the defendant's conduct after the murder that he shared Williams' criminal intent. See State v. McBee, 644 S.W.2d at 428-29. First, the defendant heard the victim moaning and observed blood in the bedroom before leaving the house but did not attempt to assist the victim. Instead, the defendant left the victim to die and divided the money with Williams for their drug purchases. Also, he admitted that he gave Williams his shirt to wipe off fingerprints from the flashlight before they threw it out the car window. The defendant also conceded to disposing of other evidence.

Under these circumstances, the jury could reasonably find that the defendant aided Williams in the murder and shared the intent necessary to establish

10

first degree premeditated and deliberate murder. Therefore, we hold that any rational trier of fact could have concluded that there was sufficient evidence to support the jury's determination of guilt beyond a reasonable doubt that the killing by Williams satisfied the elements of first degree premeditated and deliberate murder and that the defendant was criminally responsible for Williams' actions. See State v. John V. Woodruff, No. 01C01-9507-CR-00217, Davidson County, slip op. at 13 (Tenn. Crim. App. Aug. 1, 1996), app. denied (Tenn. Jan. 27, 1997) (held defendant criminally responsible for first degree premeditated and deliberate murder when he provided the transportation and the weapon used in the killing and stopped the vehicle after his codefendant stated, "we gotta get [the victim]").

## B. COUNT 2 - FELONY MURDER

The defendant also claims that his first degree murder conviction cannot stand because there is insufficient evidence to establish either (1) that the defendant recklessly killed the victim during the perpetration of a burglary or (2) that Williams recklessly killed the victim during the perpetration of a burglary and that the defendant is criminally responsible for Williams' conduct. See T.C.A. § 39-13-202(a)(2) (1991), T.C.A. § 39-11-402(2). Specifically, the defendant argues that he cannot be held responsible for the conduct of Williams because there is no evidence that he knew of Williams' intentions to kill the victim, only discovering that the victim had been killed after getting in the car to leave. The state does not argue that there is sufficient evidence to demonstrate that the defendant recklessly killed the victim himself but contends that the evidence is sufficient to show that the defendant is criminally responsible for the reckless killing committed by Williams during the perpetration of a burglary. We agree that the proof is sufficient to establish the defendant's guilt of felony murder beyond a reasonable doubt based on his criminal responsibility for the acts of Williams.

At the time of the offense, felony murder was defined as the unlawful, "reckless killing of another committed in the perpetration of, or attempt to perpetrate any first degree murder, arson, rape, robbery, burglary, theft, kidnapping or aircraft piracy."[4] T.C.A. §§ 39-13-201(a) and -202(a)(2) (1991). A person "acts recklessly with respect to circumstances surrounding the conduct or the result of the conduct when the person is aware of but consciously disregards a substantial and unjustifiable risk that the circumstances exist or the result will occur." T.C.A. § 39-11-302(c).

In order to hold the defendant criminally responsible for felony murder based upon the conduct of Williams, the state had the burden of proving that the defendant directed or aided Williams in the felony murder while acting with the intent to promote or assist the commission of the felony murder or to benefit in the proceeds or results of the felony murder. See T.C.A. § 39-11-402(2). A conviction based on criminal responsibility for another person's conduct requires that a defendant "'in some way associate himself with the venture, act with knowledge that an offense is to be committed, and share in the criminal intent of the principal in the first degree.'" State v. Maxey, 898 S.W.2d at 757. "The defendant must 'knowingly, voluntarily and with common intent unite with the principal offender[] in the commission of the crime.'" Id. In this case, the requirement that the defendant share in the criminal intent of the principal mandated that the state prove that the defendant shared, at least, the reckless mens rea required for a felony murder conviction against Williams. See T.C.A. § 39-11-402(2); State v. Maxey, 898 S.W.2d at 757. The defendant's presence, companionship and conduct before and after the offense are circumstances from which criminal intent may be inferred. State v. McBee, 644 S.W.2d at 428-29.

---

[4] Pursuant to an amendment, the reckless mens rea element for felony murder was deleted, stating that "[n]o culpable mental state is required for conviction under [the felony murder] subdivision . . . except the intent to commit the enumerated offenses or acts . . . ." T.C.A. § 39-13-202 (Supp. 1995).

12

Initially, we note that a conviction for felony murder based upon a defendant's criminal responsibility requires that the defendant act with intent to promote or assist the felony murder, a crime involving reckless conduct. We acknowledge that the Tennessee Supreme Court recently held in State v. Kimbrough, 924 S.W.2d 888 (Tenn. 1996), that the crime of attempted felony murder does not exist as a crime in Tennessee. The court stated that an attempt to commit a crime necessarily involves an intended act or result. 924 S.W.2d at 890. It also noted that felony murder, at the time of the offense, required that the killing be committed recklessly. It then reasoned that "it is logically and legally impossible to attempt to perpetrate an unintentional killing," stating, as well, "that one cannot intend to accomplish the unintended." Id. at 892. By this path, the court concluded that "the offense of attempted felony-murder does not exist in Tennessee." Id.

However, our criminal code expressly provides that the culpable mental state reflected by an "intentional" act legally suffices to establish the culpable mental states of criminal negligence and recklessness, as well. That is, T.C.A. § 39-11-301(a)(2) states:

> When the law provides that criminal negligence suffices to establish an element of an offense, that element is also established if a person acts intentionally, knowingly, recklessly. When recklessness suffices to establish an element, that element is also established if a person acts intentionally or knowingly. When acting knowingly suffices to establish an element, that element is also established if a person acts intentionally.

As the Sentencing Commission Comments explain, the lesser levels of culpability are included by law in the greater so that "a person who acts 'intentionally' also acts knowingly, recklessly and with criminal negligence." See T.C.A. § 39-11-301. Thus, although a felony murder required only a reckless killing, a conviction may be obtained even though the proof showed that the killing was intended.

13

Furthermore, Kimbrough does not deal with the issue of criminal responsibility for the crime of felony murder, while this court has previously concluded that "one can be guilty of felony murder based on that person's criminal responsibility for the conduct of another." State v. Lewis, 919 S.W.2d 62, 67 (Tenn. Crim. App. 1995); see also State v. Maxey, 898 S.W.2d at 758 (approving the application of criminal responsibility for a codefendant's rape of a child although the offense required only a reckless mens rea). For these reasons, we also conclude that a felony murder conviction can be based on criminal responsibility for the acts of another.

In fact, the evidence of the premeditated and deliberate killing which we previously discussed sufficiently proves a felony murder when considered with the commission of the burglary. Aside from an intentional killing, though, the evidence certainly reflects a reckless killing and sufficient awareness and assistance by the defendant that would prove his responsibility for Williams' conduct.

The record shows that the defendant drove Williams to the victim's house, planning to rob the victim of his money or guns. Also, the jury reasonably could have concluded that the defendant knew that Williams armed himself with the defendant's knife before they left the car because he had to reach across the driver's side to get the defendant's knife. See State v. Timothy D. Harris, No. 02C01-9211-CR-00258, Shelby County, slip. op. at 11-12 (Tenn. Crim. App. Apr. 13, 1994) (the defendant's awareness that codefendants were carrying guns during a robbery was a factor in determining that the element of recklessness had been satisfied for a felony murder conviction), rev'd. on other grounds, 919 S.W.2d 323, 327, 330 (Tenn. 1996).

Knowing that the victim was inside, both the defendant and Williams entered the home to carry out their plan. The record reflects that when confronted by the victim, the defendant entered a separate room to look for the money or guns while

14

Williams detained the victim. Williams and the victim struggled, and Williams removed his knife and stabbed the victim. The record shows that the defendant then walked into the bedroom to tell Williams it was time to leave. Rather than helping the victim once he heard the victim moaning and saw blood in the bedroom, the defendant told Williams that it was time for them to leave, ran to the car, and then drove Williams away from the scene. The defendant took the victim's money with him as he ran out of the house. Once the defendant reached a safe place, they disposed of the knife and the flashlight after wiping each of them clean. Through their joint statement, the defendant and Williams admitted their guilt to the crime of burglary, and Williams confessed to killing the victim. From these facts, the jury could have found beyond a reasonable doubt that the defendant was criminally responsible for the crime of felony murder as committed by Williams.

## II. ELECTION OF OFFENSES

The defendant next complains that the trial court erred by denying his motion to require the state to elect to prosecute on either the premeditated and deliberate murder count or the felony murder count of the indictment. He makes several arguments regarding the necessity for election. First, he asserts that charging the jury on both counts of first degree murder violated the rule against multiplicity. He contends that the two counts were opposite in theory and in elements and claims that he was unfairly prejudiced because he was forced to defend against two contradictory theories of first degree murder. Also, the defendant claims that it is impossible to have the elements of both first degree premeditated and deliberate murder and felony murder when a single killing occurs. In addition, the defendant argues that election was necessary because the trial court instructed the jury that it could "convict" the defendant on each count and the jury in fact "convicted" the defendant of both forms of first degree murder. In support of his argument, he relies upon the following instruction given by the trial court:

15

> The crime charged in each count of each indictment is a separate and distinct offense. You must decide each charge separately on the evidence and the law applicable to it. The defendant may be found guilty or not guilty of any or all of the offenses charged. Your finding as to the crime charged in each count must be stated in your verdict. In effect you will return a separate verdict in each count of [the two indictments[5]]
> . . . .

In response, the state asserts that it was proper to include both theories in the indictment and to present to the jury both counts of first degree murder because the evidence supported a conviction for each. We agree that election was not required in this case.

Multiplicity is the term applied to the improper charging of the same offense in more than one count of an indictment. The evils that it presents are two-fold. First, as to the trial itself, multiplicity may carry the potential of unfair prejudice, such as suggesting to the jury that a defendant is a multiple offender or falsely bolstering the state's proof on such issues as the defendant's motive or knowledge of wrongdoing. See State v. Desirey, 909 S.W.2d 20, 27 (Tenn. Crim. App. 1995) (citations omitted). Second, it can lead to multiple convictions and punishment for only one offense. Id. That is, an indictment violating the rule against multiplicity may lead to a violation of the Double Jeopardy Clause if it results in the imposition of cumulative punishments for only one offense. Id.

Our supreme court has held that the state is "not required to elect upon separate charges in the same indictment, although the defendant may demand election between factual occurrences." State v. Henley, 774 S.W.2d 908, 916 (Tenn. 1989). Specifically, the court concluded that the state is not required to elect between first degree premeditated and deliberate murder and felony murder charged in separate counts of the indictment for a single offense. Id. Also, the practice of submitting both

---

[5] The offenses of aggravated burglary and theft under $500.00 were the subject of an indictment separate from the indictment for first degree murder. The trial court consolidated the cases for trial.

theories of first degree murder to the jury has been accepted.  See State v. Hurley, 876 S.W.2d 57, 69-70 (Tenn. 1993); State v. Zirkle, 910 S.W.2d 874, 889 (Tenn. Crim. App. 1995); Welch v. State, 836 S.W.2d 586, 589 (Tenn. Crim. App. 1992).

Similarly, election was not required in this case.  There was no danger that the state's proof would be bolstered or that the jury would infer that the defendant was a multiple offender from the charging of alternative theories of first degree murder in separate counts.  The jury was instructed that the defendant was charged with the crime of first degree murder, and the proof established that only one killing took place.  Pursuant to T.C.A. § 39-13-202 (1991), alternative means by which the offense of first degree murder can be committed are provided.  Premeditated and deliberate murder and felony murder are both first degree murder.  State v. Hurley, 876 S.W.2d at 59-60.  The trial court made clear that the defendant could be found guilty of first degree murder based on either theory of first degree murder by instructing the jury on the elements of each count.

Although the defendant argues that permitting a trial for alternative murder charges for a single killing permits the jury to convict on one count and then use that conviction to take for granted that the defendant was guilty of the other count, the record does not support his claim.  First, the trial court instructed the jury that the state had the burden of proving beyond a reasonable doubt the defendant's guilt for the alternative counts of first degree murder.  Also, the jury was told that it must decide each charge separately and that a separate verdict must be returned for each count.  The jury did not return a general verdict of guilt for the crime of first degree murder, but instead specifically found the defendant guilty of both premeditated and deliberate murder and felony murder.  By returning separate verdicts of guilt, we may presume that the jury found that the elements for each charged offense had been proven beyond

17

a reasonable doubt. Under these circumstances, we hold that the jury would not have been confused regarding the number of offenses committed by the defendant.

Also, the charging of alternative theories of first degree murder did not lead to multiple punishment for the same offense. The jury returned guilty verdicts for both counts, and the trial court entered a single judgment of conviction for first degree murder, imposing a single sentence of life imprisonment. In a single trial, returning multiple verdicts for a single offense does not implicate double jeopardy concerns unless the trial court enters more than one judgment of conviction imposing more than one punishment for the same offense. See State v. Hurley, 876 S.W.2d at 69-70. The trial court did not impose multiple punishments in this case, and therefore, the rule against multiplicity was not violated. Under these circumstances, election was not required.

### III. JURY INSTRUCTIONS FOR FELONY MURDER

The defendant also argues that the trial court erred in its jury instructions regarding the crime of felony murder in several respects. He claims that the trial court incorrectly instructed the jury (1) by substituting the word "burglary," the underlying felony offense, for the word "offense" in its instruction for criminal responsibility for the crime of felony murder, (2) by failing to define the mental states "knowingly" and "intentionally," and (3) by declining to follow the statutory definition of the term "recklessly." The state asserts that the trial court gave a correct statement of the law in its instruction relating to criminal responsibility for felony murder because the term "offense" in the criminal responsibility provisions refers to the underlying felony and not the reckless killing. The state further argues that because the defendant did not make a special request regarding the jury instructions given for the elements of felony murder, the claims relating to the definitions of the requisite mental states have been waived. See Teague v. State, 772 S.W.2d 915, 926 (Tenn. Crim. App. 1988) (stating that the

18

failure to object contemporaneously to the state's closing argument results in waiver of the issue pursuant to T.R.A.P. 36(a)). We hold that reversible error did not occur.

The trial court has a duty to charge the jury on all of the law that applies to the facts of the case. State v. Harris, 839 S.W.2d 54, 73 (Tenn. 1992). The jury instructions should describe and define all of the elements of each offense unless the terms are of common use and understanding. State v. Cravens, 764 S.W.2d 754, 756 (Tenn. 1989). Anything short of a complete charge denies a defendant his constitutional right to a jury trial. State v. McAfee, 737 S.W.2d 304, 308 (Tenn. Crim. App. 1987).

## A. CRIMINAL RESPONSIBILITY FOR FELONY MURDER

The defendant contends that the trial court improperly instructed the jury regarding criminal responsibility for felony murder. See T.C.A. § 39-11-402(2). The trial court gave the following instruction:

> I instruct you that the defendant is criminally responsible for the first degree murder charged in this count committed beyond a reasonable doubt by another person if acting with intent to promote or assist the commission of the burglary or to benefit in the proceeds or results of a burglary; the person solicits, directs, aids or attempts to aid another person to commit a burglary.

(Emphasis added). Defense counsel objected to the instruction at trial and requested that the term "first degree murder" be inserted in the place of the underlined portions.

On appeal, the defendant claims that the substitution of the word burglary instead of first degree murder required the jury to find the defendant guilty of felony murder upon a determination that the defendant was guilty of burglary. The state disagrees and asserts that because the essential question in a felony murder situation is the extent of the defendant's involvement in the underlying felony, the words "the offense" refer to the underlying felony, in this case burglary, and not to first degree

19

murder as argued by the defendant. We disagree. The perpetration of or attempt to perpetrate the underlying felony is merely one element of the offense of felony murder. See T.C.A. § 39-13-202(a)(2) (1991). A felony murder conviction also requires that the state prove beyond a reasonable doubt that a reckless killing of another was committed in the perpetration or the attempted perpetration of an enumerated felony. Id.

In essence, the state submits that proof of the underlying felony always supplies the reckless mens rea required for a conviction of felony murder under T.C.A. § 39-13-202(a)(2) (1991). We disagree. The circumstances of the underlying offense may, but do not necessarily, provide a basis for inferring the recklessness required for a conviction of felony murder based on criminal responsibility for the acts of another. See State v. Middlebrooks, 840 S.W.2d 317, 345 (Tenn. 1992). In fact, our court has concluded that T.C.A. § 39-13-202(a)(2) (1991) does not provide a presumption of recklessness from the fact that the defendant was engaged in the commission of an enumerated offense when the killing occurred. State v. Gilliam, 901 S.W.2d 385, 390 (Tenn. Crim. App. 1995).

Before the 1989 Sentencing Act, felony murder lacked any mens rea requirement, establishing strict liability for the crime of first degree murder when a murder was committed during the perpetration of or an attempt to perpetrate an enumerated offense. See T.C.A. § 39-2-202(a)(1) (Supp. 1988); State v. Middlebrooks, 840 S.W.2d at 336. The legislature added the requirement that the killing be reckless when it enacted the 1989 Sentencing Act. See T.C.A. § 39-2-202(a)(2) (1991). By adding the requirement, the legislature intended to eliminate the possibility of a conviction based on strict liability. State v. Middlebrooks, 840 S.W.2d at 337. Therefore, the 1989 Sentencing Act required that the state not only prove beyond a reasonable doubt that a killing occurred during the perpetration or the attempted

20

perpetration of an enumerated offense, but that it also show that the killing was reckless. See T.C.A. § 39-13-202(a)(2) (1991).

By instructing the jury that the defendant is criminally responsible for the crime of first degree murder if he aided another person in committing a burglary while acting with the intent to promote or assist the burglary or to benefit in the proceeds of the burglary, the trial court permitted the jury to find the defendant guilty of first degree murder based on a determination that the defendant was criminally responsible for the burglary committed by Williams. However, as mentioned, the 1989 Sentencing Act does not provide for strict liability for the crime of felony murder based on a showing that a killing occurred during the commission of an enumerated felony. Rather, the felony murder statute in effect at the time of the offense required that the killing committed in the perpetration or attempted perpetration of an enumerated felony be reckless. Thus, the term "offense" contained in the criminal responsibility statute refers to the crime of felony murder itself and not to the underlying offense. Under these circumstances, we hold that the trial court erred in its instruction.

However, a determination of guilt for felony murder is not necessary to affirm the defendant's first degree murder conviction because there is sufficient evidence to support the defendant's conviction of first degree premeditated and deliberate murder. Therefore, we hold the error is harmless beyond a reasonable doubt. See T.R.A.P. 36(b); Tenn. R. Crim. P. 52(a); State v. Carpenter, 773 S.W.2d 1, 7-8 (Tenn. Crim. App. 1989).

### B. DEFINITIONS OF INTENTIONALLY AND KNOWINGLY

Next, the defendant contends that the trial court erred by neglecting to define the terms intentionally and knowingly within its jury instruction regarding the offense of felony murder. The state maintains that the defendant has waived the claim

21

by failing to object to the instruction at trial.  We hold that the trial court correctly instructed the jury.

Although the defendant did not submit a requested instruction or object to the ones given at trial, he raised the issue in his motion for new trial.  Pursuant to Rule 30(b), Tenn. R. Crim. P., the failure to object to the content of an instruction given or to the denial of a requested instruction at trial does not bar raising the failure as error in support of a motion for new trial.

In its felony murder instruction, the trial court informed the jury that the requirement of recklessness is also established by a showing that the defendant acted knowingly or intentionally.  See T.C.A. § 39-11-301(a)(2).  Although the trial court provided a definition for recklessness, it did not define knowingly or intentionally within the felony murder instruction.  However, knowingly and intentionally are not elements of felony murder.  See T.C.A. § 39-13-202(a)(2) (1991).  Moreover, our court has concluded that the terms knowingly and intentionally are commonly used terms for which an instruction defining the terms need not be given.  State v. Raines, 882 S.W.2d 376, 383 (Tenn. Crim. App. 1994) ("knowingly"); State v. Burnette Mize, No. 03C01-9405-CR-00163, Claiborne County, slip op. at 9-10 (Tenn. Crim. App. Sept. 22, 1995) ("intentionally"); State v. Roger Gregory, No. 01C01-9003-CR-00066, Sumner County, slip op. at 7 (Tenn. Crim. App. Dec. 12, 1990).  In addition, the trial court correctly defined intentionally within its first degree premeditated and deliberate murder instruction and knowingly within its second degree murder instruction.  The mere fact that the trial court could have given a more detailed instruction does not make the instructions given improper.  We hold that the instruction given by the trial court adequately stated the law applicable to the mens rea required for a conviction of felony murder.

22

## C. DEFINITION OF RECKLESSLY

The defendant also claims that the trial court erroneously defined the term "recklessly" in its felony murder instruction. Regarding the reckless mental state required for a conviction of felony murder, the trial court instructed the jury according to an alternative pattern jury instruction:

> [a] person acts "recklessly" if that person is aware of and consciously disregards a substantial and unjustifiable risk either (1) that a particular result will occur; or (2) that a particular circumstance exists.
>
> The risk must be of such nature and degree that disregarding it constitutes a gross deviation from the standard of care that a reasonable person would observe in the situation.

See T.P.I. - Crim. 2.10 (4th ed.). The statute defining the term "reckless" provides:

> "Reckless" refers to a person who acts recklessly with respect to circumstances surrounding the conduct or the result of the conduct when the person is aware of but consciously disregards a substantial and unjustifiable risk that the circumstances exist or the result will occur. The risk must be of such a nature and degree that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the accused person's standpoint.

T.C.A. § 39-11-302(c) (emphasis added). The defendant claims that the above emphasized portions of the statute were either changed or deleted altogether, completely changing the meaning of the statutory language.

The state asserts that the defendant also waived this issue by failing to object contemporaneously to the instruction given by the trial court. Pursuant to Rule 30 (b), Tenn. R. Crim. P., a defendant is permitted to challenge the content of an instruction or the denial of a requested instruction as error in support of a motion for new trial despite the failure to object at trial. This rule has been interpreted by our supreme court as allowing claims of the denial of a requested instruction or of a positive error in the jury instructions but not of errors of omissions when no objection or special request was made at trial. See State v. Lynn, 924 S.W.2d 892, 898-99 (Tenn. 1996). However, alleged omissions in the charge must be raised at trial, or the issue is waived.

Id. In addition, the fact that the instructions could have been more detailed does not render the instructions as given to be improper, and absent a special request for an additional charge, a trial court will not be held in error. State v. Haynes, 720 S.W.2d 76, 85 (Tenn. Crim. App. 1986).

At trial, the defendant neither objected to the jury instruction defining "recklessly" nor made a special request that the trial court define the term as provided by T.C.A. 39-11-302(c). Rather, he asserted generally in his motion for new trial that the trial court incorrectly defined the elements of felony murder.

We disagree with the defendant's claim that the definition of "recklessly" given by the trial court and provided by T.P.I.-Crim. 2.10 (4th ed.) is an incorrect statement of the law. Our court has previously held that the language of the alternative pattern jury instruction is adequate for the definition of "recklessly." See State v. Parker, 887 S.W.2d 825, 828 (Tenn. Crim. App. 1994). We recognize that our court previously interpreted T.C.A. § 39-11-302(c) as requiring that the jury "view the situation through the eyes of the suspect" when deciding whether he or she could have perceived and then chosen to ignore a "substantial and unjustifiable risk." See State v. Slater, 841 S.W.2d 841, 842-43 (Tenn. Crim. App. 1992). However, we also note that Tennessee law does not mandate any particular jury instructions be given so long as the trial court gives a complete charge on the applicable law. State v. West, 844 S.W.2d at 151.

We believe that the pattern jury instruction for the definition of "recklessly" given by the trial court adequately defined the term because "in the situation" implies that the jury must look at the facts as viewed from the defendant's standpoint. Also, the terms "reasonable person" and "would observe" as used by the trial court in its instruction have essentially the same meaning as the terms "ordinary person" and

24

"would exercise" as provided in the statutory definition. The fact that the jury instruction could have been more detailed does not render the instruction given to be improper, and absent a special request, a trial court will not be held in error for not augmenting otherwise adequate instructions. See State v. Haynes, 720 S.W.2d at 85 ("Mere meagerness of the charge is not reversible error, in the absence of a special request for an additional charge."). Thus, we conclude that the instruction sufficiently informed the jury of the definition of "recklessly" as it related to felony murder.

## IV. OTHER JURY INSTRUCTIONS

The defendant's last argument is that the trial court erred in instructing the jury (1) by denying the defendant's special request relating to the burden of proof for culpable mental state and the requirement of culpable mental state and (2) by incorrectly instructing the jury regarding lesser included and lesser grade offenses. The state asserts that the trial court correctly instructed the jury.

## A. BURDEN OF PROOF

The defendant asserts that the trial court should have granted his request to instruct the jury regarding the burden of proof for and the requirement of a culpable mental state. The defendant requested that the following instructions be charged:

> Burden of Proof of Culpability. -- A Defendant in this case may not be convicted of an offense unless the culpable mental state of the Defendant is proven.
>
> This means that a person commits an offense who acts intentionally, knowingly, recklessly, or with criminal negligence.
>
> Requirement of Culpable Mental State. -- When the law provides that criminal negligence suffices to establish an element of an offense, that element is also established if a person acts intentionally, knowingly or recklessly. When recklessness suffices to establish an element, that element is also established if a person acts intentionally or knowingly. When acting knowingly suffices to establish an element, that element is also established if a person acts intentionally.

25

> If the definition of an offense within this title does not plainly dispense with a mental element, intent, knowledge or recklessness suffices to establish the culpable mental state.

The trial court denied the defendant's request, stating that the charge adequately covered the areas. The record reflects that the trial court instructed the jury that the state had the burden of proving all of the elements of the crime charged beyond a reasonable doubt. Although contained within the individual instructions for each offense, the charge provided the culpable mental states required for each offense. Moreover, the trial court instructed the jury in its felony murder instruction that "[t]he requirement of 'reckless' is also established if it is shown that the defendant acted knowingly or intentionally." The trial court's second degree murder instruction similarly detailed the mental elements.

The state's contention is that the trial court correctly determined that the requested instruction was adequately covered in other areas of the charge. We agree. In criminal cases, the trial court has a duty to charge the jury on all of the law that applies to the facts of the case. State v. Harris, 839 S.W.2d 54, 73 (Tenn. 1992). Anything short of a complete charge denies a defendant his constitutional right to trial by a jury. State v. McAfee, 737 S.W.2d at 308. In our opinion, the instructions given by the trial court adequately covered the issue of culpable mental state. The state also argues that the last sentence of the defendant's special request was not even applicable to the facts of the case, and thus, the trial court did not err in its instruction. Once again, we agree. For these reasons, we conclude that the trial court correctly instructed the jury regarding the state's burden of proof and the requirement of a culpable mental state.

## B. LESSER OFFENSES

Next, the defendant asserts that the trial court erroneously charged the jury regarding lesser included offenses for the crime of first degree murder. The defendant's argument is two-fold: (1) the trial court erred by omitting any references to criminal responsibility in its instructions relating to the lesser included offense of second degree murder and the lesser grade offense of voluntary manslaughter charged by the trial court, and (2) the trial court erred by refusing to charge the lesser included offense of criminally negligent homicide. The state contends that the trial court properly instructed the jury. We hold that the trial court did not commit reversible error.

The defendant has a constitutional right to complete and accurate instructions of the law. State v. McAfee, 737 S.W.2d at 308. Therefore, the trial court has a duty to give a complete charge of the law applicable to the facts of a case. State v. Harbison, 704 S.W.2d 314, 319 (Tenn. 1986). The failure to do so deprives the accused of the right to a jury trial. State v. McAfee, 737 S.W.2d at 308.

### 1. CRIMINAL RESPONSIBILITY FOR LESSER OFFENSES

First, the defendant argues that the trial court erred in its instructions relating to the lesser included offense of second degree murder and the lesser grade of voluntary manslaughter. The defendant contends that the failure to charge criminal responsibility in relation to the lesser offenses deprived him of the right to have the jury consider the lesser included offenses. The state submits that the defendant has waived the issue by failing to make a special request and by failing to include the issue in his motion for new trial. We disagree. In his motion for new trial, the defendant specifically included the issue as grounds for relief.[6] Pursuant to Rule 30(b), Tenn. R. Crim. P., a defendant may challenge an instruction given or the denial of a requested

---

[6] The defendant asserted in his motion for new trial that the trial court "erred in failing to charge the jury on criminal responsibility as to the lesser included offenses of second degree murder and voluntary manslaughter which effectively deprived the jury of considering whether . . . Williams committed second degree murder or voluntary manslaughter and the Defendant being criminally responsible for the either of these two lesser included offenses."

instruction in his motion for a new trial although neither an objection nor a special request was made at trial.

The record reflects that the defendant filed a motion requesting that the trial court instruct the jury on the lesser included and lesser grade offenses of second degree murder, voluntary manslaughter and involuntary manslaughter[7]. The jury instructions given for the lesser offenses do not specifically address criminal responsibility. Also, the instructions do not contain a criminal responsibility provision generally applicable to all of the offenses charged. Rather, the criminal responsibility provisions given by the trial court were incorporated in the instructions for the first degree murder counts.

The record is not clear whether the defendant requested additional instructions regarding criminal responsibility for the lesser offenses. An off-the-record conference concerning jury charges was held in chambers at the close of trial. Later, the defendant objected on the record and out of the presence of the jury to the instruction given by the trial court in counts one and two as to criminal responsibility for the conduct of another. A day later, the defendant filed a motion for mistrial. In his motion, the defendant asserted that a mistrial was necessary because the trial court failed to charge criminal responsibility for another's conduct relating to the lesser offenses of second degree murder and voluntary manslaughter. He claimed that during the jury instruction conference, he requested that the trial court not change its proposed instruction[8] because tailoring the criminal responsibility provision did not allow it to apply to all other criminal offenses. The defendant argued that tailoring the criminal responsibility provision restricted the jury's consideration of the lesser offenses, thus

---

[7] The 1989 Sentencing Act replaced involuntary manslaughter with the offense of criminally negligent homicide. See T.C.A. § 39-13-212, Sentencing Commission Comments. In his motion for new trial, the defendant argues that the error in failing to instruct the lesser included offense related to criminally negligent homicide and not involuntary manslaughter.

[8] The record does not reflect what the trial court originally proposed as its instruction regarding criminal responsibility.

28

depriving him of the jury's consideration of whether Williams committed the lesser offenses for which the defendant should be held criminally responsible.

Under these circumstances, we agree that it would have been preferable for the trial court to relate more clearly the criminal responsibility instructions to all of the offenses. However, although the instructions could have been more detailed, we believe that the jury was adequately instructed regarding criminal responsibility in the jury instruction relating to first degree murder. We note that the United States Supreme Court has made the following observation regarding the evaluation of claims of erroneous jury instructions:

> Jurors do not sit in solitary isolation booths parsing instructions for subtle shades of meaning in the same way lawyers might. Differences among them in interpretation of instructions may be thrashed out in the deliberative process, with commonsense understanding of the instructions in the light of all that has taken place at the trial likely to prevail over technical hairsplitting.

Boyde v. California, 494 U.S. 370, 380-81, 110 S. Ct. 1190, 1198 (1990); State v. Henry Eugene Hodges, No. 01S01-9505-CR-00080, Davidson County, slip op. at 12 (Tenn. Apr. 28, 1997) (for publication); see also State v. Van Tran, 864 S.W.2d 465, 479 (Tenn. 1993). Although a technical argument can be made that the jury was not advised to consider criminal responsibility of the defendant with respect to the lesser offenses of second degree murder and voluntary manslaughter, such an interpretation of the jury's process in analyzing the charge would not take into account the jury's commonsense understanding of the instructions given under the facts showing that the defendant was not the actual killer. Under these circumstances, we hold that the lesser included and lesser grade offense instructions given by the trial court were not erroneous.

29

## 2. CRIMINALLY NEGLIGENT HOMICIDE

Next, the defendant contends that the trial court should have instructed the jury regarding criminally negligent homicide because the proof at trial supported such an instruction. The state argues that the record does not permit an inference of guilt for criminally negligent homicide, a lesser included and lesser grade offense of first degree murder, but instead clearly shows that the defendant is guilty of the greater offense of first degree murder. We hold that the trial court did not commit reversible error by failing to provide a criminally negligent homicide instruction.

Under T.C.A. § 39-13-212, "[c]riminally negligent conduct which results in death constitutes criminally negligent homicide." The definition of criminally negligent conduct is contained in T.C.A. § 39-11-302(d):

> "Criminal negligence" refers to a person who acts with criminal negligence with respect to the circumstances surrounding that person's conduct or the result of that conduct when the person ought to be aware of a substantial and unjustifiable risk that the circumstances exist or the result will occur. The risk must be of such a nature and degree that the failure to perceive it constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the accused person's standpoint.

Pursuant to T.C.A. § 40-18-110(a), a trial court is required "to charge the jury as to all of the law of each offense included in the indictment, without any request on the part of the defendant to do so." When the evidence, introduced by either the state or the defendant, is susceptible of inferring guilt of either a lesser grade or class of the charged offense or a lesser included offense, there is a mandatory duty upon the trial court to charge such lesser offense. See T.C.A. § 40-18-110(a); State v. Trusty, 919 S.W.2d 305, 310 (Tenn. 1996); Johnson v. State, 531 S.W.2d 558, 559 (Tenn. 1975); State v. Howard, 926 S.W.2d 579, 585-86 (Tenn. Crim. App. 1996). However, the instruction is not required if there is no proof in the record to support a conviction for the lesser offense. State v. Trusty, 919 S.W.2d at 311.

Our supreme court recently held that defendants are entitled to jury instructions on all lesser included offenses and on all lesser grades or classes of the offense charged if the evidence would support a conviction for the offense. State v. Trusty, 919 S.W.2d at 311. The instructions must be given to allow the jury "to consider all relevant offenses in determining the appropriate offense, if any, for conviction." Id. In its explanation of the entitlement to a jury instruction on lesser included and lesser grade offenses, the court described the difference between an offense of a "lesser grade or class" and one that is "lesser included." See State v. Trusty, 919 S.W.2d at 310-11. The statutory scheme determines whether an offense is a lesser grade or class. Id. at 311 (explaining that voluntary manslaughter is a lesser grade but not a lesser included offense of first degree murder). For instruction purposes, an offense is a lesser included offense "if the elements of the included offense are a subset of the elements of the charged offense and only if the greater offense cannot be committed without also committing the lesser offense." Id. at 310 (reaffirming the test set forth in Howard v. State, 578 S.W.2d 83, 85 (Tenn. 1979) for determining whether an offense is a lesser included offense). Relative to the facts of this case, criminally negligent homicide is a lesser grade or class and a lesser included offense of first degree murder. See State v. Trusty, 919 S.W.2d at 311; State v. Lynn, 924 S.W.2d at 899.

In Strader v. State, 210 Tenn. 669, 362 S.W.2d 224, 228-29 (1962), our supreme court explained how the trial court should determine the need for a lesser included offense instruction. It stated that "where the evidence, upon any view the jury may take of it, permits an inference of guilt as to such lesser included offenses, it is the mandatory duty of the Trial Judge to charge all the law as to each of the offenses, and a failure to do so requires a reversal and a new trial." Id.; see also State v. Boyce, 920 S.W.2d 224, 226 (Tenn. Crim. App. 1995). Thus, in effect, the trial court must consider the evidence in the light most favorable to the existence of the lesser included offense and if the evidence so considered permits an inference of guilt of the lesser included

31

offense, the trial court must give instructions as to that lesser offense. Otherwise, the trial court's consideration of the evidence runs the risk of invading the province of the jury relative to witness credibility, the weight and sufficiency of the evidence and the degree of the offense, if any, to be sustained.

The evidence viewed in the light most favorable to the existence of the lesser included offense reflects that before the defendant and Williams left the car, Williams reached across the driver's side to get the defendant's knife and placed it in his pocket. The defendant and Williams then entered the victim's house. Both the defendant and Williams told the officers that they intended to scare the victim but not to harm him. The evidence shows that Williams removed the knife from his pocket after the victim grabbed his hair and leg. The proof was that Williams then stabbed the victim because he would not let him go and because "he had no choice."

This evidence supports a criminally negligent homicide instruction based upon the defendant's criminal responsibility for the conduct of Williams. It would permit an inference that Williams acted with criminal negligence by taking a knife with him to burglarize the victim's home. Both the defendant and Williams knew that the victim was inside when they entered the victim's home. Although Williams stated that he planned to steal the victim's money or guns and only wanted to scare the victim, he ought to have been aware of a substantial and unjustifiable risk that he would be confronted by the victim and be in a situation where the knife might be used against the victim, causing the victim's death. Moreover, as mentioned earlier, the evidence permits an inference that the defendant is criminally responsible for the conduct of Williams. In addition to providing the transportation and the weapon used in the killing, the defendant was aware that the victim was inside when he and Williams entered the victim's home to rob the victim.

32

The evidence is also susceptible of inferring the defendant's guilt for criminally negligent homicide based on the defendant's own criminally negligent conduct. Specifically, the defendant acted with criminal negligence because he knew that Williams armed himself with his knife before entering the victim's home. Further, the defendant and Williams planned to steal either money or guns from the victim. Therefore, the defendant should have been aware of a substantial and unjustifiable risk that the circumstances were such that Williams could either use his knife or obtain a gun and either stab or shoot the victim during the commission of the burglary. Under these circumstances, the trial court should have instructed the jury regarding the lesser included offense of criminally negligent homicide.

However, error associated with the trial court's failure to instruct a lesser included offense has been held to be harmless when the jury finds the defendant guilty of the greater offense and rejects other lesser included offenses that are greater offenses than the one requested and were included in the instructions. See State v. Atkins, 681 S.W.2d 571, 577 (Tenn. Crim. App. 1984). Here, the jury found the defendant guilty of both premeditated and deliberate murder and felony murder, declining to return guilty verdicts for the lesser offenses of second degree murder and voluntary manslaughter. We hold that the trial court's denial of the defendant's request for a criminally negligent homicide instruction was harmless beyond a reasonable doubt.

In consideration of the foregoing and the record as a whole, the judgment of conviction is affirmed.

_____
Joseph M. Tipton, Judge

33

CONCUR:

_____
Gary R. Wade, Judge


_____
Robert E. Burch, Special Judge