IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
October 14, 2008 Session

## STATE OF TENNESSEE v. GALE MARLEEN KRIZKA

**Appeal from the Criminal Court for Morgan County**
**No. 8930   E. Eugene Eblen, Judge**

---

**No.  E2007-02465-CCA-R3-CD - Filed March 26, 2009**

---

Appellant, Gale Marleen Krizka, was indicted for first degree murder for the death of her husband. At the conclusion of the proof at trial, the trial court dismissed the first degree murder charge.  The case proceeded to the jury on several lesser included offenses.  After deliberating, the jury found Appellant guilty of second degree murder.  As a result, the trial court sentenced her to twenty-two years in incarceration.  Appellant seeks a review of her conviction, arguing that the evidence was insufficient to support the conviction for second degree murder and that the trial court improperly instructed the jury on criminal responsibility for the acts of another.  We determine that the evidence presented at trial supports a jury instruction on criminal responsibility for the acts of another and that the evidence was sufficient to support the second degree murder conviction.  Accordingly, the judgment of the trial court is affirmed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court is Affirmed.**

JERRY L. SMITH, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and ROBERT W. WEDEMEYER, JJ., joined.

Joe H. Walker, District Public Defender and Walter B. Johnson, Assistant Public Defender, for the appellant, Gale Marleen Krikza.

Robert E. Cooper, Jr., Attorney General and Reporter; Rachel West Harmon, Assistant Attorney General; J. Scott McCluen, District Attorney General, and Frank Harvey, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

On May 31, 2002, a body was located on a secluded embankment in Scott County.  The area was commonly used for illegal dumping.  A person riding a four-wheeler discovered the body and notified the authorities.  The body was clothed in blue underwear-like shorts and had been wrapped in a shawl or blanket along with a black plastic tarp.  The body appeared to have come partially out

of the blanket and black plastic tarp when it rolled down the approximately fifty-foot embankment. Both of the items appeared to have been secured around the body by an old, frayed rope. The tarp and blanket contained blood stains from the body. Randy Lewallen, a detective from the Scott County Sheriff's Department, responded to the call.

According to Detective Lewallen, the body was in a moderate state of decomposition. There was maggot activity in the body. The body was removed by the Scott County Rescue Squad and transported to Knoxville for an autopsy.

The autopsy was performed by Sandra K. Elkins, a forensic pathologist. She described the victim as a five foot six inch tall male that weighed 316 pounds. The autopsy revealed that the victim had suffered multiple lacerations to the scalp, multiple skull fractures, and incisions of the right internal jugular vein, right carotid artery, esophagus, and cervical vertebrae. Dr. Elkins opined that the cause of death was blunt force trauma to the head and a stab wound to the neck. There was no blood left in the body, so Dr. Elkins forwarded a liver sample to the Tennessee Bureau of Investigation ("TBI") for completion of a DNA analysis.

At the time that the autopsy was performed, police had not yet identified the victim. In order to assist in their investigation and identification of the victim, the police contacted the local news media. Several Knoxville television stations ran a story about the discovery of the body and a plea was made for public assistance in identification of the body. Investigators were contacted by a person that identified herself as Ann Christopher, the daughter of Richard Krizka, the victim.[1] Appellant is Ms. Christopher's mother.

The police went to Ms. Christopher's place of business in Clinton, Tennessee, where she was shown pictures from the autopsy. Ms. Christopher stated that it looked like the victim and that the shawl located with the body looked like a shawl that belonged to her Aunt Melissa. Ms. Christopher stated that she had last seen the victim late in the afternoon on May 26, 2002. He was driving his motor home down the road by the elementary school. The next day, Memorial Day, Appellant called Ms. Christopher from Wal-Mart around 5:00 p.m. or 6:00 p.m. to tell her that Mr. Krizka had left her a note in which he stated that he was going to Arkansas to buy some property. This was not uncharacteristic behavior for Mr. Krizka. According to Ms. Christopher, Mr. Krizka "did things like that" and sometimes took off with someone he did not know. However, Appellant was upset because she and Mr. Krizka were supposed to go the next day to start divorce proceedings.

Ms. Christopher went to visit her mother the next day. Appellant was "bleaching" the carpets and the furniture was moved over to one side of the room.[2] Ms. Christopher did not find her

_____

[1]At trial, Ms. Christopher denied that she was the person who contacted authorities.

[2]On May 29, 2002, Appellant rented a rug doctor from Darnell's Grocery in Wartburg. In order to rent the machine, Appellant had to present a valid identification. Appellant presented a driver's license in the name of Gale
(continued...)

mother's actions unusual because the victim was a "slob" who did not bathe regularly and would often track in grease onto the carpet. Additionally, Ms. Christopher explained that "they did have a dog that lived in the house at the time and she'd been in heat" making a "big mess."

After identifying the victim, the police attempted to find Appellant. They located her on June 7, 2002, at Darrell Webster's residence and accompanied her to her own residence where she consented to a search of the home. During the search, Detective Lewallen discovered a boat anchor with an old frayed rope that appeared to match a rope found near the body. Detective Lewallen also noted that the carpet looked like it had been recently cleaned. Detective Lewallen "noted that it abruptly stopped where the carpet goes down the hallway." During the initial visit to the home the officers took a computer, a power cord, some pieces of black plastic, carpet samples, and some branches from the home.

A second search warrant was executed on June 10, 2002. During the second search the officers were accompanied by members of the TBI Mobile Crime Team Lab. The search revealed "some blood splatters on the walls, or red, brownish stains." The "wooden frame couch" was also flipped over during the search and revealed "red/brownish stains that had run down between the cracks that hadn't been accessible to being cleaned." They were described by Detective Lewallen as "thick, red brownish stains" that were suspected to be blood. There were also "very large, red/brownish stains underneath the carpet and in the pad" that were "massive" in size. The couch cushions also appeared to have been recovered with a different upholstery. During this search, authorities took a cigarette wrapper from Appellant's vehicle's trunk, a wet vac bucket from the garage, a sample from the couch frame, a sample from the wall behind the couch, a sample from the carpet beneath the couch, and a knife. The samples taken from the couch frame, the wall, the carpet, and the cigarette wrapper matched the victim's DNA that was obtained from the liver sample. No blood was found on the knife handle. The wet vac test was presumptive for blood, but it could not be determined if the blood was human. Police also transported two vehicles to Nashville for inspection.

Appellant was indicted by the Morgan County Grand Jury for first degree murder on January 21, 2003.

At trial, Ms. Christopher testified that approximately one week prior to Mr. Krizka's disappearance, Appellant told her that the couple was having "a little trouble" and "that one way or another they'd be divorced in a couple of weeks." Ms. Christopher also testified about a statement made by Appellant when she and the victim were "fussing" that she did not consider a "serious threat" on the victim's life. She recalled that Appellant told her once that the victim "had a seafood allergy, and that if there was some way that she could get seafood into his food or something where he wouldn't know it, then, you know, he would have a reaction from that and could possibly die

---

[2](...continued)
Anderson, 380 Mill Road, Wartburg, Tennessee. Appellant was formerly known as Gale Anderson.

from it." Additionally, Ms. Christopher remembered that Appellant had mentioned a cousin by the name of Charlie Massengill. Appellant "said something about calling him to have something done to [the victim]. But not to kill him, but like bodily injury or something like that." Several years prior to the victim's death, he had gallbladder surgery and a cancer scare. Around this time, Appellant mentioned to Ms. Christopher that if the victim were to die, Appellant "would be well taken care of" with the victim's pension.

Thomas Hull also testified at trial. Mr. Hull is Appellant's former boyfriend and father of Ms. Christopher. Mr. Hull and Appellant were out of touch for a number of years but reconnected in the year 2000. During one of their visits, Appellant advised Mr. Hull that the victim "would not give [Appellant] a divorce. And if he was to meet a death she would inherit some money and a retirement." Mr. Hull told Appellant a story about a time while he was in military service in Vietnam and he had to decapitate a Vietnamese guard to get away from capture. Appellant responded by saying that "she thought that would be the coolest thing in the world, to kill somebody, and cut their head off, and them knowing it was going to happen." Appellant also told Mr. Hull that Mr. Krizka was allergic to seafood. Appellant asked Mr. Hull's opinion of "cooking seafood, boiling it or something and putting it in some kind of food for the iodine, . . . , cause he was allergic to that. And doing away with him like that, I guess." As a result of those conversations, Mr. Hull did not see or speak with Appellant again.

At the conclusion of the jury trial, the trial court recognized that the case was based on circumstantial evidence and dismissed the first degree murder charge, determining that "at this point the jury would have to speculate to find premeditation." The trial court felt that with regard to the lesser included offenses, there was enough proof for it to be a "jury question."

The jury ultimately convicted Appellant of second degree murder. As a result, the trial court sentenced Appellant to twenty-two years incarceration. Appellant filed a timely notice of appeal seeking a review of her conviction.

*Analysis*

On appeal, Appellant first contends that the trial court should not have instructed the jury on criminal responsibility for the acts of another. Specifically, she argues that "there was no proof in the record of any act of [Appellant] to . . . solicit, direct, aid or attempt to aid another person to commit the offense of second degree murder." In other words, Appellant argues that the fact that she "could not have committed the crime [due to the victim's size] does not mean that she must be responsible for the acts of someone else, instead it means she is not guilty." The State disagrees, arguing that "there was proof presented that could lead a reasonable jury to conclude that [Appellant] did not act alone and that she acted with the intent to financially benefit from the victim's death."

"It is the duty of a trial judge to give a complete charge of the law applicable to the facts of a case." *State v. Harbison*, 704 S.W.2d 314, 319 (Tenn. 1986). In other words, "a defendant has a constitutional right to a correct and complete charge of the law." *State v. Teel*, 793 S.W.2d 236, 249

(Tenn. 1990). Generally, the trial court must instruct the jury on the rules of law applicable to the issues that are fairly raised by the evidence adduced at trial. *State v. Townes*, 56 S.W.3d 30, 36 (Tenn. Crim. App. 2000), *overruled on other grounds by State v. Terry*, 118 S.W.3d 355 (Tenn. 2003). In determining whether jury instructions are erroneous, this Court must review the charge in its entirety and invalidate the charge only if, when read as a whole, it fails to fairly submit the legal issues or misleads the jury as to the applicable law. *State v. Vann*, 976 S.W.2d 93, 101 (Tenn. 1998).

"A person is criminally responsible as a party to an offense, if the offense is committed by the person's own conduct, by the conduct of another for which the person is criminally responsible, or by both." T.C.A. § 39-11-401(a). Tennessee Code Annotated section 39-11-402(2) provides that an appellant is criminally responsible for the actions of another when, "[a]cting with intent to promote or assist the commission of the offense, or to benefit in the proceeds or results of the offense, [Appellant] solicits, directs, aids, or attempts to aid another person to commit the offense . . . ." The appellant must "'in some way associate himself with the venture, act with knowledge that an offense is to be committed, and share in the criminal intent of the principal in the first degree.'" *State v. Maxey*, 898 S.W.2d 756, 757 (Tenn. Crim. App. 1994) (quoting *Hembree v. State*, 546 S.W.2d 235, 239 (Tenn. Crim. App. 1976)). The defendant's requisite criminal intent may be inferred from his "presence, companionship, and conduct before and after the offense." *State v. McBee*, 644 S.W.2d 425, 428 (Tenn. Crim. App. 1982). "An indictment that charges an accused on the principal offense 'carries with it all the nuances of the offense,' including criminal responsibility." *State v. Lemacks*, 996 S.W.2d 166, 173 (Tenn. 1999) (quoting *State v. Lequire*, 634 S.W.2d 608, 615 (Tenn. Crim. App. 1981)). A defendant convicted under a criminal responsibility theory "is guilty in the same degree as the principal who committed the crime" and "is considered to be a principal offender." Id. at 171. Criminal responsibility is not a separate crime; rather, it is "solely a theory by which the State may prove the defendant's guilt of the alleged offense . . . based upon the conduct of another person." *Lemacks*, 996 S.W.2d at 170. Under a theory of criminal responsibility, an individual's "[p]resence and companionship with the perpetrator of a felony before and after the commission of [an] offense are circumstances from which [his or her] participation in the crime may be inferred." *State v. Ball*, 973 S.W.2d 288, 293 (Tenn. Crim. App. 1998). No particular act need be shown, and the defendant need not have taken a physical part in the crime in order to be held criminally responsible. *Id.*

In the case herein, at the conclusion of the proof, counsel for Appellant objected to the jury instruction on criminal responsibility, claiming that the evidence was not sufficient to allow that charge. The trial court overruled the objection, charging the jury with criminal responsibility for the acts of another with respect to the charge of second degree murder.

Appellant points out on appeal that "there is simply no evidence that another person existed for [whose actions Appellant] could be responsible. The fact that [Appellant] could not have [physically] committed the crime does not mean that she must be responsible for the acts of someone else. . . ." We agree that there was no direct proof offered at trial to show that another person was involved in the death of the victim. However, there was evidence introduced by the State that Appellant had discussed involving her cousin, Charlie Massengill, "to have something done" to Mr.

-5-

Krizka. Appellant had also mentioned to two other people the possibility of poisoning the victim with seafood. Additionally, there was proof offered at trial that indicated Appellant would financially benefit from the victim's death. Even under a theory of criminal responsibility, the proof showed that Appellant sought at one time to enlist the assistance of another person in harming the victim. Further, the fact that there was such a disparity in size between the victim, at over 300 pounds, and Appellant, at around 140 pounds, could lead the jury to infer that there was another person involved in the victim's death. As stated previously, in order to uphold a jury instruction, this Court must review the charge in its entirety and invalidate the charge only if, when read as a whole, it fails to fairly submit the legal issues or misleads the jury as to the applicable law. *Vann*, 976 S.W.2d at 101. We determine that a jury instruction on criminal responsibility was fairly raised by the evidence adduced at trial. Appellant is not entitled to relief on this issue.

### *Sufficiency of the Evidence*

Appellant argues on appeal that the evidence is insufficient to support her conviction for second degree murder. Specifically, Appellant argues that the only evidence against her was that she cleaned her carpets after the victim's disappearance and that there was no "physical evidence" to tie her to the crime. The State disagrees, alleging that the evidence supported the conviction.

When a defendant challenges the sufficiency of the evidence, this Court is obliged to review that claim according to certain well-settled principles. A verdict of guilty, rendered by a jury and "approved by the trial judge, accredits the testimony of the" State's witnesses and resolves all conflicts in the testimony in favor of the State. *State v. Cazes*, 875 S.W.2d 253, 259 (Tenn. 1994); *State v. Harris*, 839 S.W.2d 54, 75 (Tenn. 1992). Thus, although the accused is originally cloaked with a presumption of innocence, the jury verdict of guilty removes this presumption "and replaces it with one of guilt." *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982). Hence, on appeal, the burden of proof rests with the defendant to demonstrate the insufficiency of the convicting evidence. *Id.* The relevant question the reviewing court must answer is whether any rational trier of fact could have found the accused guilty of every element of the offense beyond a reasonable doubt. *See* Tenn. R. App. P. 13(e); *Harris*, 839 S.W.2d at 75. In making this decision, we are to accord the State "the strongest legitimate view of the evidence as well as all reasonable and legitimate inferences that may be drawn therefrom." *See Tuggle*, 639 S.W.2d at 914. As such, this Court is precluded from reweighing or reconsidering the evidence when evaluating the convicting proof. *State v. Morgan*, 929 S.W.2d 380, 383 (Tenn. Crim. App. 1996); *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Moreover, we may not substitute our own "inferences for those drawn by the trier of fact from circumstantial evidence." *Matthews*, 805 S.W.2d at 779. Further, questions of witness credibility, the weight and value of evidence, and resolution of conflicts in the evidence are entrusted to the trier of fact. *State v. Odom*, 928 S.W.2d 18, 23 (Tenn. 1996).

Although Appellant in the case herein rightfully contends that there is no direct evidence of her guilt, it has long been recognized that circumstantial evidence may be used exclusively to establish guilt. *State v. Pendergrass*, 13 S.W.3d 389, 392-93 (Tenn. Crim. App. 1999). "The weight of the circumstantial evidence is for the jury to determine." *Williams v. State*, 520 S.W.2d 371, 374

(Tenn. Crim. App. 1974). Further, "[a] conviction may be based entirely on circumstantial evidence when the facts are 'so clearly interwoven and connected that the finger of guilt is pointed unerringly at the defendant and the defendant alone.'" *State v. Smith*, 868 S.W.2d 561, 569 (Tenn. 1993) (quoting *State v. Duncan*, 698 S.W.2d 63, 67 (Tenn. 1985)). If the trier of fact can determine from the proof that all other reasonable theories except that of guilt are excluded, the evidence is sufficient.

In order to obtain a conviction for second degree murder, the State is required to prove that Appellant caused the knowing killing of another. *See* T.C.A. § 39-13-210(a)(1). As part of its burden of proof, the State must prove beyond a reasonable doubt that the accused is the person who committed the offense. *See White v. State*, 533 S .W.2d 735, 744 (Tenn. Crim. App. 1975). Identity of the accused may be accomplished by either direct or circumstantial evidence, or both. *State v. Thompson*, 519 S.W.2d 789, 793 (Tenn. 1975). The determination of identity is a question of fact for the jury after a consideration of all competent evidence. *See State v. Strickland*, 885 S.W.2d 85, 87 (Tenn. Crim. App. 1993) (citing *State v. Crawford*, 635 S.W.2d 704, 705 (Tenn. Crim. App. 1982)); *Biggers v. State*, 411 S.W.2d 696, 697 (Tenn. 1967);

A conviction for second degree murder requires proof that the defendant unlawfully and knowingly killed another. T.C.A. §§ 39-13-201, -210(a). "A person acts knowingly with respect to a result of the person's conduct when the person is aware that the conduct is reasonably certain to cause the result." T.C.A. § 39-11-302(b). "Intent, which can seldom be proven by direct evidence, may be deduced or inferred by the trier of fact from the character of the assault, the nature of the act and from all the circumstances of the case in evidence." *State v. Inlow*, 52 S.W.3d 101, 105 (Tenn. Crim. App. 2000); *see also State v. Holland*, 860 S.W.2d 53, 59 (Tenn. Crim. App. 1993).

Although largely circumstantial, we determine that the evidence in the record is more than sufficient to support Appellant's conviction for second degree murder. Appellant had motive and opportunity. She knew that she would obtain money if the victim died and had expressed her frustration over the fact that the victim would not give her a divorce. Appellant had mentioned having someone else do something to harm the victim in the past, and she discussed exploiting the victim's dangerous allergy as a possible way to kill him. Appellant was seen bleaching the carpets in her home near the time of Appellant's disappearance. There was a large amount of dried blood found in Appellant's home in the carpet, on the walls, and on the furniture that matched the DNA of the victim. The fact finders in this cause could rationally conclude that Appellant's guilt was established beyond a reasonable doubt. Appellant is not entitled to relief on this issue.

*Conclusion*

For the foregoing reasons, the judgment of the trial court is affirmed.

_____
JERRY L. SMITH, JUDGE