# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### October 20, 2009 Session

## STATE OF TENNESSEE v. DONALD RAY BLEVINS

**Appeal from the Circuit Court for Warren County**
**No. F-11100    Larry B. Stanley, Jr., Judge**

---

**No. M2009-00124-CCA-R3-CD - Filed April 26, 2010**

---

The Warren County Grand Jury indicted Appellant, Donald Ray Blevins, for two counts of delivery of cocaine, a Schedule II controlled substance, in an amount of less than 0.5 grams, and one count of delivery of cocaine, a Schedule II controlled substance, in an amount of 0.5 grams or more. These offenses were based upon three drug transactions involving a confidential informant's telephone calls to Appellant and further dealings with two other individuals. Following a jury trial, Appellant was convicted of facilitation of delivery of cocaine in an amount less than 0.5 grams, delivery of cocaine in an amount less than 0.5 grams, and delivery of cocaine in an amount of 0.5 grams or more. The trial court sentenced Appellant as a Range I, standard offender and imposed an effective nine-year sentence to be served at thirty percent. Appellant appealed his convictions arguing that the evidence was insufficient to support his convictions and that the trial court erred in denying his motion to sever offenses. We have reviewed the record on appeal. We conclude that the evidence was sufficient to support Appellant's convictions of the delivery offenses based upon the theory of criminal responsibility. In addition, the evidence was sufficient to support his conviction for facilitation of delivery. We also conclude that the trial court did not abuse its discretion in determining that the telephone calls were part of a common scheme or plan and for that reason the denial of Appellant's motion to sever offenses was proper. Therefore, we affirm the judgments of the lower court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court is Affirmed.**

JERRY L. SMITH, J., delivered the opinion of the court, in which DAVID H. WELLES and THOMAS T. WOODALL, JJ., joined.

Michael Meise, Dickson, Tennessee, for the appellant, Donald Ray Blevins.

Robert E. Cooper, Jr., Attorney General and Reporter; Deshea Dulany Faughn, Assistant Attorney General; Dale Potter, District Attorney General, and Tom Miner, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### *Factual Background*

In 2004, Angie Miller Keal was arrested on a vandalism charge. She offered to become a confidential informant to help law enforcement complete various drug purchases in Warren County. On December 6, 2006, Ms. Keal met with Investigator Mark Martin, of the Warren County Sheriff's Department, and Investigator Bill Davis, with the McMinnville Police Department. The purpose of the meeting was to arrange a drug buy from Appellant. The investigators searched Ms. Keal and her vehicle. They also set up a transmitting device so they could listen to her conversations during the buys. She called Appellant and asked "did he know where anything was." Mr. James Sayne called Ms. Keal shortly after her conversation with Appellant. As a result of Mr. Sayne's telephone call, Ms. Keal went to Mark's Market, which was run by Appellant and his wife. Before she left, the investigators gave Ms. Keal $100 to complete the buy. She drove her own vehicle and met Mr. Sayne. He got into her car and told her to take him to the North Side Laundromat. When they arrived at the laundromat, Ms. Keal got out of the car and waited at the laundromat, while Mr. Sayne took her car to go get the drugs. He returned with the drugs. He asked Ms. Keal if she would share the drugs with him. She refused. Ms. Keal drove Mr. Sayne back to Mark's Market. Appellant was standing by his car at the market. Ms. Keal drove to meet the officers and turned over the drugs.

On January 10, 2007, Ms. Keal again met with Investigators Martin and Davis to arrange another drug buy. She called Appellant. She asked Appellant about obtaining some crack cocaine. He told her she could get some from Mr. Sayne, but he would not do anything less than a "benji." She understood that to mean that Mr. Sayne would not sell an amount below $100. The officers searched both Ms. Keal and her car and gave her $100. They also set up a transmitting device again. Ms. Keal drove to Mark's Market, and Mr. Sayne got in the car with her. Once again, they drove to the laundromat. Mr. Sayne got out of the car, and went into the backdoor of the laundromat. Mr. Sayne was the only one in the laundromat. When he returned to the car, Mr. Sayne gave Ms. Keal some cocaine. Ms. Keal did not know if Mr. Sayne had the cocaine on his person when she picked him up at Mark's Market, or if he had gotten it inside the laundromat. She drove Mr. Sayne back to the market and returned to the officers. She handed over the cocaine to them.

On January 17, 2007, Ms. Keal placed another call to Appellant. She told Appellant that she did not want to purchase drugs from Mr. Sayne because he had not given her the full amount of cocaine the last time. Appellant replied that it was not his fault that Mr. Sayne had

shorted her. Shortly after her telephone call with Appellant, Michael Wright called Ms. Keal from Appellant's telephone. Once again, the officers searched Ms. Keal and her car. They set up a transmitting device and gave her money to purchase the drugs. Ms. Keal met Mr. Wright at Riverside Market. Mr. Wright got into her car, and she drove them to a gas station. Mr. Wright gave her the drugs while they were at the gas station. Ms. Keal gave Mr. Wright the $100 the officers gave her to purchase the drugs. Several times, Mr. Wright asked Ms. Keal to buy a pack of cigarettes for him at the gas station. Eventually she agreed and went to buy the cigarettes. Mr. Wright got out of Ms. Keal's car and got into a car with Mr. Sayne. After Mr. Wright left with Mr. Sayne, Appellant called Ms. Keal. Appellant asked her where Mr. Wright was. Ms. Keal returned to the officers and gave them the drugs.

Investigator Davis testified that Ms. Keal had been involved in around twenty-five drug purchases that had resulted in ten arrests. He met with Ms. Keal before each of the above-described purchases.

On December 6, 2006, Investigator Davis met Ms. Keal. He searched both her person and her car and outfitted her with a transmitting device. Ms. Keal called Appellant and arranged the drug purchase. He followed Ms. Keal as she drove to Mark's Market, picked up Mr. Sayne, and drove to the laundromat. He continued to monitor the transaction until Ms. Keal returned Mr. Sayne to the market. After she had completed the drug transaction, Ms. Keal gave Investigator Davis the drugs.

On January 10, 2007, Investigator Davis recorded a telephone conversation between Ms. Keal and the Appellant regarding the drug purchase which transpired. He overheard Appellant tell Ms. Keal that Mr. Sayne would not do less than a "benji." Once again, Investigator Davis followed Ms. Keal to Mark's Market and monitored her transmitting device. He overheard Ms. Keal receive a telephone call from Mr. Sayne. Later, Investigator Davis determined that the telephone call by Mr. Sayne had been placed from Appellant's telephone.

On January 17, 2007, Investigator Davis recorded Ms. Keal's telephone conversation with Appellant. After Ms. Keal concluded her telephone conversation with Appellant, Investigator Davis monitored a telephone call Ms. Keal received from Mr. Wright. Mr. Wright's call was also placed from Appellant's telephone. After the drug transaction was completed, Investigator Davis overheard a telephone call from Appellant to Ms. Keal wondering where Mr. Wright was.

Later on January 17, officers stopped Mr. Sayne driving a red Jeep-like vehicle. Investigator Davis stated that this vehicle had picked up Mr. Wright at the gas station after

his drug transaction with Ms. Keal. Appellant came to the scene of the traffic stop and claimed that he owned the vehicle driven by Mr. Sayne.

After each of the three drug purchases, the officers packaged the drugs in small envelopes to be sent to the laboratory for testing. Don Carmon is a drug analyst with the Tennessee Bureau of Investigation ("TBI"). He received two samples of a rock-like substance from Investigator Davis. He received a sample collected on December 6, 2006, that he determined was cocaine and weighed 0.2 grams. He also tested a sample collected on January 17, 2007, that tested positive for cocaine and weighed 0.5 grams. Celeste White, with the TBI, also received a rock-like substance from Investigator Davis. The sample was collected on January 10, 2007. She determined that the sample was cocaine and weighed 0.4 grams.

The Warren County Grand Jury indicted Appellant for two counts of delivery of cocaine, a Schedule II controlled substance, in an amount of less than 0.5 grams, and one count of delivery of cocaine, a Schedule II controlled substance, in an amount of 0.5 grams or more. Appellant filed a motion for severance of offenses on January 23, 2008. On June 25, 2008, the trial court held a hearing on Appellant's motion. By written order, the trial court denied Appellant's motion to sever offenses.

On August 28, 2008, a jury trial was held. At the conclusion of the trial, the jury convicted Appellant of facilitation of delivery of cocaine in an amount less than 0.5 grams, delivery of cocaine in an amount less than 0.5 grams, and delivery of cocaine in an amount of 0.5 grams or more. On October 8, 2008, the trial court held a sentencing hearing and imposed an effective nine-year sentence to be served at thirty percent as a Range I, standard offender.

Appellant filed a timely notice of appeal.

## ANALYSIS

### Sufficiency of the Evidence

Appellant argues that the evidence is insufficient to support his conviction for the offenses. When a defendant challenges the sufficiency of the evidence, this Court is obliged to review that claim according to certain well-settled principles. A verdict of guilty, rendered by a jury and "approved by the trial judge, accredits the testimony of the" State's witnesses and resolves all conflicts in the testimony in favor of the State. *State v. Cazes*, 875 S.W.2d 253, 259 (Tenn. 1994); *State v. Harris*, 839 S.W.2d 54, 75 (Tenn. 1992). Thus, although the accused is originally cloaked with a presumption of innocence, the jury verdict of guilty

removes this presumption "and replaces it with one of guilt." *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982). Hence, on appeal, the burden of proof rests with the defendant to demonstrate the insufficiency of the convicting evidence. *Id.* The relevant question the reviewing court must answer is whether any rational trier of fact could have found the accused guilty of every element of the offense beyond a reasonable doubt. *See* Tenn. R. App. P. 13(e); *Harris*, 839 S.W.2d at 75. In making this decision, we are to accord the State "the strongest legitimate view of the evidence as well as all reasonable and legitimate inferences that may be drawn therefrom." *See Tuggle*, 639 S.W.2d at 914. As such, this Court is precluded from re-weighing or reconsidering the evidence when evaluating the convicting proof. *State v. Morgan*, 929 S.W.2d 380, 383 (Tenn. Crim. App. 1996); *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Moreover, we may not substitute our own "inferences for those drawn by the trier of fact from circumstantial evidence." *Matthews*, 805 S.W.2d at 779. Further, questions concerning the credibility of the witnesses and the weight and value to be given to evidence, as well as all factual issues raised by such evidence, are resolved by the trier of fact and not the appellate courts. *State v. Pruett*, 788 S.W.2d 559, 561 (Tenn. 1990).

At trial, the State proceeded under a theory of criminal responsibility to prove Appellant's guilt of the offenses. "A person is criminally responsible as a party to an offense, if the offense is committed by the person's own conduct, by the conduct of another for which the person is criminally responsible, or by both." T.C.A. § 39-11-401(a). Tennessee Code Annotated section 39-11-402(2) provides that a person is criminally responsible for the actions of another when, "[a]cting with intent to promote or assist the commission of the offense, or to benefit in the proceeds or results of the offense, the person solicits, directs, aids, or attempts to aid another person to commit the offense . . . ." The person must "'in some way associate himself with the venture, act with knowledge that an offense is to be committed, and share in the criminal intent of the principal in the first degree.'" *State v. Maxey*, 898 S.W.2d 756, 757 (Tenn. Crim. App. 1994) (quoting *Hembree v. State*, 546 S.W.2d 235, 239 (Tenn. Crim. App. 1976)). The defendant's requisite criminal intent may be inferred from his "presence, companionship, and conduct before and after the offense." *State v. McBee*, 644 S.W.2d 425, 428 (Tenn. Crim. App. 1982). "An indictment that charges an accused on the principal offense 'carries with it all the nuances of the offense,' including criminal responsibility." *State v. Lemacks*, 996 S.W.2d 166, 173 (Tenn. 1999) (quoting *State v. Lequire*, 634 S.W.2d 608, 615 (Tenn. Crim. App. 1981)). A defendant convicted under a criminal responsibility theory "is guilty in the same degree as the principal who committed the crime" and "is considered to be a principal offender." *Id.* at 171. Criminal responsibility is not a separate crime; rather, it is "solely a theory by which the State may prove the defendant's guilt of the alleged offense . . . based upon the conduct of another person." *Lemacks*, 996 S.W.2d at 170. No particular act need be shown, and the

defendant need not have taken a physical part in the crime in order to be held criminally responsible. *Id.*

"It is an offense for a defendant to knowingly . . . . [d]eliver a controlled substance." T.C.A. § 39-17-417(a)(2). "[A] person . . . acts knowingly with respect to the conduct or to circumstances surrounding the conduct when the person is aware of the nature of the conduct or that the circumstances exist." T.C.A. § 39-11-302(b). Circumstantial evidence alone may be sufficient to support a conviction. *State v. Tharpe*, 726 S.W.2d 896, 899-900 (Tenn. 1987); *State v. Gregory*, 862 S.W.2d 574, 577 (Tenn. Crim. App. 1993). The circumstantial evidence "'must be not only consistent with the guilt of the accused but it must also be inconsistent with innocence and must exclude every other reasonable theory or hypothesis except that of guilt, and it must establish such a certainty of guilt of the accused as to convince the mind beyond a reasonable doubt that [the defendant] is the one who committed the crime.'" *Tharpe*, 726 S.W.2d at 900 (quoting *Pruitt v. State*, 460 S.W.2d 385, 390 (Tenn. Crim. App. 1970)).

In the case at hand, a jury convicted Appellant of delivery of cocaine in an amount less than 0.5 grams based upon the January 10, 2007 drug purchase and delivery of cocaine in amount of 0.5 or more based upon the January 17, 2007 drug purchase. When the evidence is viewed in a light most favorable to the State, we conclude that the evidence is sufficient to support the jury's verdict based upon the theory of criminal responsibility. On both January 10 and 17, Ms. Keal telephoned Appellant to purchase drugs. Appellant specifically stated with whom she would be dealing for her drug transactions. For the January 10 purchase, Appellant told Ms. Keal she would need $100. Shortly after her call to Appellant Mr. Sayne and Mr. Wright contacted her about arranging a drug purchase. With regard to the January 10, 2007 purchase, Ms. Keal drove to Appellant's place of business and picked up Mr. Sayne who provided her with cocaine. Following the January 17 purchase, Appellant called Ms. Keal to determine Mr. Wright's whereabouts. In addition, evidence was presented that both Mr. Wright and Mr. Sayne used Appellant's telephone to call Ms. Keal to arrange the drug purchases. Investigator Davis testified that Mr. Sayne was arrested driving the red, Jeep-like vehicle that picked up Mr. Wright after the January 17 purchase, and that Appellant came to the scene of the traffic stop claiming that he was the owner of the vehicle.

We conclude that a rational trier of fact could determined that Appellant was aware that Mr. Sayne and Mr. Wright were going to sell cocaine to Ms. Keal. Therefore, he shared the same criminal intent as required to convict under a theory of criminal responsibility. He clearly acted with intent to promote or assist in the commission of the offense based upon his fielding Ms. Keal's initial telephone calls, discussing with whom she would be dealing, providing his telephone for use by Mr. Sayne and Mr. Wright, and providing his car. For one

buy, Appellant's place of business was also the location where Ms. Keal initially met Mr. Sayne who delivered the cocaine. Therefore, the evidence was sufficient on a theory of criminal responsibility to support Appellant's convictions of delivery of cocaine in an amount less than 0.5 grams based upon the January 10, 2007 drug purchase and delivery of cocaine in amount of 0.5 or more based upon the January 17, 2007 drug purchase.

Appellant was also convicted of a facilitation of delivery of a cocaine in an amount less than 0.5 grams based upon the December 6, 2006 purchase. As stated above, Tennessee Code Annotated section 39-17-417(a)(2) makes it an offense for a defendant to knowingly deliver a controlled substance. A violation of section 39-17-417(a) with respect to cocaine in an amount less than .5 grams is a Class C felony. T.C.A. § 39-17-417(c)(2)(A). Facilitation of possession of a controlled substance with the intent to sell or deliver has been acknowledged as a lesser included offense of possession with intent to sell or deliver. *See State v. Nash*, 104 S.W.3d 495, 499 (Tenn. 2003). Facilitation is defined as follows, "A person is criminally responsible for the facilitation of a felony if, knowing that another intends to commit a specific felony, but without the intent required for criminal responsibility under § 39-11-402(2) the person knowingly furnishes substantial assistance in the commission of the felony." As stated previously, criminal responsibility, under Tennessee Code Annotated section 39-11-402(2), is, "Acting with intent to promote or assist the commission of the offense, or to benefit in the proceeds or results of the offense, the person solicits, directs, aids or attempts to aid another person to commit the offense."

We conclude that there was ample evidence to support Appellant's conviction for facilitation of delivery of cocaine. The evidence presented with regard to this count was that Ms. Keal called Appellant in an attempt to arrange a drug purchase. Appellant informed Ms. Keal with whom she would be dealing and provided a telephone to Mr. Sayne to call Ms. Keal back to make arrangements. In addition, Ms. Keal picked Mr. Sayne up at Appellant's place of business. A rational trier of fact could reasonably conclude that Appellant was furnishing substantial assistance while knowing that Mr. Sayne intended to sell cocaine to Ms. Keal.

Therefore, this issue is without merit.

## **Severance**

Appellant's second argument is that the trial court erred in denying his motion to sever offenses. The State argues that the trial court properly denied the motion.

A trial judge's decision with respect to a motion for severance of offenses is one entrusted to the sound discretion of the judge and will not be reversed on appeal absent an

abuse of that discretion. *State v. Shirley*, 6 S.W.3d 243, 245 (Tenn. 1999). Additionally, "a trial court's refusal to sever offenses will be reversed only when 'the trial court applied an incorrect legal standard, or reached a decision which is against logic or reasoning that caused an injustice for the party complaining.'" *Id*. at 247 (quoting *State v. Shuck*, 953 S.W.2d 662, 669 (Tenn. 1997)). The Tennessee Supreme Court has opined that:

> [B]ecause the trial court's decision of whether to consolidate offenses is determined from the evidence presented at the hearing, appellate courts should usually only look to that evidence, along with the trial court's findings of fact and conclusions of law, to determine whether the trial court abused its discretion by improperly joining the offenses.

*Spicer v. State*, 12 S.W.3d 438, 445 (Tenn. 2000). Rule 8(b) of the Tennessee Rules of Criminal Procedure governs permissive joinder of offenses. Pursuant to Rule 8(b):

> Two or more offenses may be joined in the same indictment, presentment, or information, . . . or consolidated pursuant to Rule 13 if: (1) the offenses constitute parts of a common scheme or plan; or (2) they are of the same or similar character.

Tennessee Rule of Criminal Procedure 14(b)(1) governs severance of offenses. That rule provides:

> [I]f two or more offenses have been joined or consolidated for trial pursuant to Rule 8(b) the defendant shall have a right to severance of the offenses unless the offenses are part of a common scheme or plan and the evidence of one would be admissible upon trial of the others.

Tenn. R. Crim. P. 14(b)(1). A trial court may not deny a severance pursuant to Rule 14(b)(1) unless it concludes:

> [F]rom the evidence and arguments presented at the hearing that: (1) the multiple offenses constitute parts of a common scheme or plan; (2) evidence

of each offense is relevant to some material issue in the trial of the other offenses; and (3) the probative value of the evidence of other offenses is not outweighed by the prejudicial effect that admission of the evidence would have on the defendant.

*Spicer*, 12 S.W.3d at 445 (internal citations omitted). Furthermore, "a defendant has an absolute right to sever offenses that are only of the same or similar character." *Id.* at 443.

There are three types of common scheme or plan evidence recognized in Tennessee: (1) offenses that reveal a distinctive design or are so similar as to constitute "signature" crimes; (2) offenses that are part of a larger, continuing plan or conspiracy; and (3) offenses that are all part of the same criminal transaction. *Shirley*, 6 S.W3d at 248.

The "primary inquiry into whether a severance should have been granted under Rule 14 is whether the evidence of one crime would be admissible in the trial of the other if the two counts of indictment had been severed." *Id.* at 247 (quoting *State v. Burchfield*, 664 S.W.2d 284, 286 (Tenn. 1984)). However, Tennessee Rule of Evidence 404(b) excludes evidence of "other crimes, wrongs, or acts" committed by the defendant when offered only to show the defendant's propensity to commit those "crimes, wrongs, or acts" to ensure a defendant receives a fair trial. When offenses alleged to be parts of a common scheme or plan are otherwise relevant to a material issue at trial, however, then Rule 404 will not bar their admissibility into evidence. *See Bunch v. State*, 605 S.W.2d 227, 229 (Tenn. 1980).

We initially point out that the record on appeal does not contain a transcript of the trial court's hearing on Appellant's motion to sever. When a record is not complete and does not contain relevant information, this Court must presume that the trial court was correct in its ruling. *See State v. Richardson*, 875 S.W.2d 671, 674 (Tenn. Crim. App.1993); *State v. Cooper*, 736 S.W.2d 125, 131 (Tenn. Crim. App.1987).

According to the trial court's order denying the motion, the State argued that severance was improper because the offenses were part of a common scheme or plan based upon the fact that Ms. Keal spoke with Appellant by telephone before each of the three drug transactions. The trial court stated that Appellant admitted in both written and oral arguments that he had spoken with her by telephone on each of the three occasions. Appellant also argued that "while he is a party to the telephone calls, there is nothing in the telephone conversations that would suggest Defendant's involvement in criminal behavior." The trial court stated that this argument by Appellant raises the question as to whether the telephone calls as a group would establish Appellant's "guilty knowledge, his criminal intent

or motive" and whether Appellant's participation was a mistake or accident. The trial court held the following:

> The Court finds that the issue of whether the Defendant acted with guilty knowledge, intent or motive to commit a crime, or whether he was caught up in a mistake or accident is a material issue in the trial of the Defendant['s] cases which would warrant the admission of these telephone conversations. The Court finds that the proof to be [elicited] regarding Defendant's participation in these conversations is clear and convincing in that Defendant acknowledges in his written and oral argument that he was in fact a party to the conversations and there is a digital recording of the conversations whose authenticity has not been challenged. The Court further finds the probative value of the evidence of these telephone conversations is not outweighed by the danger of unfair prejudice in that, unlike the situation where the State seeks to offer evidence of a criminal conviction or evidence that Defendant engaged in some other completed wrongdoing, the evidence to be offered in this case is that the Defendant took part in the relatively benign activity of engaging in telephone conversations and it will be a disputed issue at trial as to whether the telephone conversations involved any criminal activity or wrongdoing so the Defendant will have the opportunity to argue what meaning should be given to the evidence.

> In as much as the question of whether the Defendant had guilty knowledge, intent or motive to engage in criminal conduct, or was the victim of mistake or accident will have to be overcome by the State in this cause and to overcome those defenses the State will have to offer evidence that the Defendant was involved in a common scheme or plan . . . . The Court further finds that were the offenses severed for trial, evidence of the other two offenses would be admissible in the trial of the third for purpose of demonstrating Defendant's guilty knowledge, motivation and intent and lack of any accident or mistake by the State in misconstruing Defendant's telephone conversations.

Based upon the record before this Court on appeal, we find no abuse of discretion by the trial court. We conclude that the trial court's determination that the telephone calls constituted a common scheme was correct. The trial court clearly conducted the proper analysis as set out above that "(1) the multiple offenses constitute parts of a common scheme or plan; (2) evidence of each offense is relevant to some material issue in the trial of the other offenses; and (3) the probative value of the evidence of other offenses is not outweighed by

the prejudicial effect admission of the evidence would have on the defendant." *Spicer*, 12 S.W.3d at 445.

Therefore, this issue is without merit.

## **CONCLUSION**

For the foregoing reasons, we affirm the judgments of the trial court.


_____
JERRY L. SMITH, JUDGE