FILED

08/05/2021

Clerk of the
Appellate Courts

IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
May 19, 2021 Session

**STATE OF TENNESSEE v. JOSEPH ANTHONY SANTILLAN**

**Appeal from the Criminal Court for Davidson County**
**No. 2016-D-1972    Steve R. Dozier, Judge**
_____

**No. M2020-00074-CCA-R3-CD**
_____

Joseph Anthony Santillan, Defendant, appeals from his convictions for second degree murder, felony murder,[1] attempted especially aggravated robbery, and attempted aggravated robbery, and effective sentence of life imprisonment plus five years for his involvement in the shooting death of a Nashville tourist in September of 2016. After the denial of a motion for new trial, Defendant appeals, raising the following issues: (1) whether the trial court erred by limiting the questioning about a witness's criminal history; (2) whether the trial court erred by prohibiting defense counsel from questioning a witness about leniency in exchange for her testimony; (3) whether the trial court erred by prohibiting evidence of Defendant's cooperation with law enforcement; (4) whether the trial court erred by admitting gruesome crime scene photographs into evidence; and (5) whether the evidence was sufficient to sustain the convictions. After a thorough review, we affirm the judgments of the trial court.

 **Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

TIMOTHY L. EASTER, J., delivered the opinion of the court, in which ROBERT H. MONTGOMERY, JR., J., joined. NORMA MCGEE OGLE concurred in results only.

Erin D. Coleman (on appeal), Leah Wilson (at trial), and Elaine Heard (at pretrial hearings), Nashville, Tennessee, for the appellant, Joseph Anthony Santillan.

Herbert H. Slatery III, Attorney General and Reporter; Ronald L. Coleman, Assistant Attorney General; Glenn R. Funk, District Attorney General; and J. Wesley King, Kate Melby and Chandler Harris, Assistant District Attorneys General, for the appellee, State of Tennessee.

_____

[1] The trial court merged the convictions for second degree murder and felony murder.

# OPINION

## *Factual Background*

The Davidson County Grand Jury indicted Defendant, Andy Nunez, and Daniela Cruz for first degree murder, felony murder, attempted especially aggravated robbery, attempted aggravated robbery, and reckless endangerment[2] in October of 2016. The indictment was based on a series of events that took place in downtown Nashville on September 25, 2016, the culmination of which resulted in the death of Theodore Grasset and the attempted robbery of Larry Niehues.

Prior to trial, the State entered into a use immunity agreement with Ms. Cruz. She gave a statement to authorities on May 17, 2018. According to the agreement, the District Attorney agreed not to use the statement against Ms. Cruz in any criminal proceeding "unless [s]he should testify differently under oath as to any material facts contained in the statement." The use immunity agreement was silent as to whether Ms. Cruz would receive a plea agreement or reduced sentence in exchange for her statement and testimony. The case against Ms. Cruz was severed from Defendant and Mr. Nunez prior to trial. The State also gave notice that Ms. Cruz would be a potential State witness at Defendant's trial. Mr. Nunez and Defendant were tried together.[3] The facts of this case were summarized by a panel of this court in the direct appeal of Mr. Nunez's convictions.

> At trial, Ms. Cruz provided a detailed account of the events leading up to Mr. Grasset's death. The State put forth proof that Ms. Cruz and [Mr. Nunez] were dating and living together in September of 2016. Ms. Cruz and [Mr. Nunez] had known each other for a few months at the time. On the day of the incident, Ms. Cruz, [Mr. Nunez], [Defendant], Sami Krasniqi, and Michelle Rogers[4] were all at an apartment in Antioch. Ms. Cruz had known Mr. Krasniqi since she was fourteen years old and had known Ms. Rogers for a few months. Mr. Krasniqi proposed that the group burglarize the home of one of his relatives to steal the contents of a safe.

---

[2] The charge for reckless endangerment was dismissed prior to trial. Defendant claims on appeal that he was not even charged with this crime. The indictment within the technical record indicates otherwise.

[3] Mr. Nunez's convictions and sentences were affirmed by this Court on direct appeal. *See State v. Andy F. Nunez*, No. M2019-00473-CCA-R3-CD, 2020 WL 4734916, at *1 (Tenn. Crim. App. Aug. 14, 2020), *perm. app. denied* (Tenn. Jan. 13, 2021).

[4] Ms. Rogers died prior to trial.

At the time, [Defendant] drove a grey Chevrolet Impala. The Impala was equipped with a distinctive blue light near the license plate. [Defendant] and Mr. Krasniqi tried to remove the blue light from the license plate area prior to the planned burglary. They were unsuccessful. The group left the apartment, travelling in the Impala and another car toward the address of the proposed burglary. Once they arrived, Mr. Krasniqi tried to get [Mr. Nunez], [Defendant], and Ms. Cruz to enter the house. They declined. The group split up with Ms. Cruz, [Defendant], Ms. Rogers, and [Mr. Nunez] leaving in the Impala. They stopped at several different locations before finally driving toward downtown Nashville.

Ms. Cruz was driving when they arrived downtown, and [Mr. Nunez] was seated in the passenger seat. Ms. Rogers was in the back seat behind Ms. Cruz; [Defendant] was in the back seat behind [Mr. Nunez]. [Mr. Nunez] told Ms. Cruz to drive down Broadway. Ms. Cruz made a wrong turn. [Mr. Nunez] was angry with Ms. Cruz, corrected her, and told her where to drive. Ms. Cruz drove to Fourth Avenue South near the Country Music Hall of Fame. [Mr. Nunez] instructed her to stop the car on the street near Mr. Grasset and Mr. Niehues, who were walking on the sidewalk.

[Mr. Nunez] and [Defendant] got out of the car. [Mr. Nunez] was wearing some type of face covering. He yelled at Mr. Grasset and Mr. Niehues to stop walking. Instead of complying with [Mr. Nunez]'s demand, the men ran. Mr. Grasset ran back toward Broadway, and Mr. Niehues ran into an alley. [Mr. Nunez] shot Mr. Grasset as he ran away. Mr. Grasset fell to the ground and was able to get back up and run a short distance before collapsing. [Mr. Nunez] and [Defendant] returned to the Impala. [Mr. Nunez] got in the back seat[,] and [Defendant] got in the front seat. Ms. Cruz drove the car out of town, heading south on I-65. When they arrived at the trailer where [Mr. Nunez] and Ms. Cruz were living, [Defendant] and Ms. Rogers left in the Impala.

Surveillance cameras at a loading dock near the scene captured the shooting. The video footage showed the Impala with the distinctive blue light. The Impala stopped and two men exited the vehicle. One of the men wore a mask and the other man wore a white baseball cap with a black bill. Police initially released limited images from the surveillance cameras; they specifically refrained from releasing images of the blue light at the license plate of the vehicle.

- 3 -

On October 1, [2018,] Ms. Cruz and [Mr. Nunez] left Nashville for North Carolina. Police were able to identify [Defendant] as the owner of the vehicle in early October and by mid-October, located the vehicle. The blue light, front and rear bumpers, and spoiler had been removed. Police also executed a search warrant at [Defendant]'s home, where they found a white hat with a black bill consistent with the hat worn by one of the men in the surveillance video. Police recovered [Defendant]'s cell phone from his employer. The cell phone had been placed in a toilet tank at a construction site in Franklin.

By mid-October, police had identified Ms. Rogers and Ms. Cruz as suspects. Police interviewed Ms. Cruz's mother, Mary Cruz. Mrs. Cruz told police that she was able to identify [Mr. Nunez] from the surveillance video because she bought the pants he was wearing. She also recognized his gait. She identified [Mr. Nunez] as her daughter's boyfriend. Mrs. Cruz called her daughter. Ms. Cruz promised her mother that she would return to Nashville to assist with the investigation. Instead, Ms. Cruz bought bus tickets to Brownsville, Texas for herself and [Mr. Nunez] under diffrent names. Ms. Cruz and [Mr. Nunez] were eventually arrested in late October in Raleigh, North Carolina.

During her initial interview with police, Ms. Cruz was not forthcoming. Eventually, she gave police an account of the events that took place on the night of the shooting, including pieces of information about the incident that the police had not yet released to the public. Police analyzed Ms. Cruz's cell phone. Forensic analysis of location data from her cell phone was consistent with her account of the events.

During her testimony at trial, Ms. Cruz was questioned about her use immunity agreement. She stated that she had not been promised anything for her testimony but acknowledged that she hoped to get a reduced charge and lesser sentence. On cross-examination, Ms. Cruz denied that her lawyer told her testifying would be a good way to get a favorable resolution to her case. Ms. Cruz claimed that she also testified to get closure for the events that took place.

*State v. Andy F. Nunez*, No. M2019-00473-CCA-R3-CD, 2020 WL 4734916, at *1-3 (Tenn. Crim. App. Aug. 14, 2020), *perm. app. denied* (Tenn. Jan. 13, 2021).

Neither Defendant nor Mr. Nunez presented any proof.

- 4 -

At the conclusion of the proof, Defendant was found guilty of second degree murder, felony murder, attempted especially aggravated robbery, and attempted aggravated robbery. After a sentencing hearing, Defendant was sentenced to an effective sentence of life plus five years. Defendant filed a motion for new trial in which he challenged the sufficiency of the evidence. Defendant filed an amended motion for new trial in which he argued that the trial court abused its discretion by limiting his questioning about Ms. Cruz's prior record, refusing to allow defense counsel to argue that Ms. Cruz was "getting the ability to plea to a lesser crime", excluding evidence of his cooperation with police, and admitting photographs into evidence. The trial court denied the motion for new trial. This appeal followed.

*Analysis*

*Questioning of Ms. Cruz at Trial About her Criminal History*

First, Defendant argues that the trial court abused its discretion by failing to follow the procedural guidelines of Tennessee Rule of Evidence 609. Specifically, Defendant complains that the trial court prohibited defense counsel from questioning Ms. Cruz about her convictions from the previous ten years, instead limiting questions to the twelve months preceding the trial. Defendant argues that the trial court also erred by determining that the use of Ms. Cruz's "conviction history would be more prejudicial than probative" because she was not on trial in the case. The State counters that Defendant waived the issue for failing to object and that Defendant is not entitled to plain error review.

At trial, there was a jury out hearing during which the trial court instructed Defendant and Mr. Nunez to ask "whatever questions you're wanting to ask [Ms. Cruz] that you think . . . should go before the jury in terms of her credibility." Counsel for Mr. Nunez asked Ms. Cruz about the "thefts" she committed within the year prior to the offenses. Ms. Cruz stated that she stole "out of cars." Counsel for Mr. Nunez attempted to ask Ms. Cruz whether she stole from people's houses. The trial court excluded the question because counsel for Mr. Nunez did not have a factual basis and was "just fishing for information." Counsel for Defendant did not ask any questions of the witness and did not object to the limitation of questioning of the witness.

Tennessee Rule of Appellate Procedure 36(a) provides that "[n]othing in this rule shall be construed as requiring relief to be granted to a party responsible for an error or who failed to take whatever action was reasonably available to prevent or nullify the harmful effect of the error." This Court has previously determined that an objection by a co-defendant does not relieve the other defendant of the obligation to enter a contemporaneous objection in order to preserve an issue for an appeal on his behalf. *State v. Norris Ray*, No. W2004-01247-CCA-R3-CD, 2005 WL 1541785, at *6 (Tenn. Crim.

App. June 27, 2005), *perm. app. denied* (Tenn. Dec. 5, 2005) (citing *State v. Steve Bradford*, No. 03C01-9607-CCA-CR-00278, 1998 WL 24417, at *6 (Tenn. Crim. App. Jan. 20, 1998), *no perm. app. filed*)).  This issue is waived.

*Questioning of Ms. Cruz About Leniency in Exchange for Testimony*

Next, Defendant argues that the trial court erred by "effectively" depriving counsel "of the right to cross-examine" Ms. Cruz "regarding bias or motive in testifying for the State" when counsel was prohibited from presenting evidence of the District Attorney's office policy on use immunity agreements.  The State argues that Defendant was not limited in questioning Ms. Cruz at trial and, to the extent Defendant is arguing that his constitutional rights were violated, the issue is waived for failing to present it in the trial court.

Prior to trial, counsel for Mr. Nunez filed a subpoena seeking documents from the District Attorney about use immunity agreements in homicide cases.  Counsel for Mr. Nunez explained at a motion hearing that he was trying to expose how the District Attorney gave "sweet deal[s]" to defendants in exchange for their testimony.  At the hearing, counsel for the State insisted that there was no deal with Ms. Cruz.  At that hearing, counsel for the State and the trial court noted that Defendant had not raised an issue with regard to Ms. Cruz.

At trial, Ms. Cruz noted that she did not have a deal with the State.  On cross-examination, Defendant inquired about Ms. Cruz's "goal" for testifying.  There was no objection from the State or interruption from the trial court during cross-examination of Ms. Cruz.

We fail to see how Defendant was prohibited from cross-examining Ms. Cruz about leniency she was given for her testimony.  To the extent Defendant is now attempting to raise a constitutional challenge that his right to confrontation was somehow violated, this issue is waived for failing to raise it in the trial court.  *See* Tenn. R. App. P. 36(a). Moreover, this Court has already determined that Mr. Nunez was "able to question and alert the jury as to Ms. Cruz's motivation for testifying" and "was not prohibited or limited in his questioning."  *State v. Andy Nunez*, 2020 WL 4734916, at *5.

*Evidence of Defendant's Cooperation with Law Enforcement*

Defendant challenges the trial court's refusal to allow defense counsel to question a detective about the fact that Defendant turned himself in on the murder charges.  Defendant argues that the "testimony would have provided some evidence of good character and

- 6 -

remorse to the jury deciding [Defendant's] fate." The State argues that the trial court properly exercised its discretion.

Here, counsel for Defendant tried to ask the investigating officer on cross-examination about whether Defendant eventually turned himself in to the police. The State objected, and the trial court sustained the objection.

The threshold issue with regard to the admissibility of evidence is relevance. Relevant evidence is evidence "having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Tenn. R. Evid. 401. "Evidence which is not relevant is not admissible." Tenn. R. Evid. 402. Even if evidence is deemed relevant, it may be still be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Tenn. R. Evid. 403. Additionally, "[e]vidence of a person's character or trait of character is not admissible for the purpose of proving action in conformity therewith on a particular occasion." Tenn. R. Evid. 404(a).

The trial court determined that whether Defendant turned himself in to the police was not relevant to whether Defendant committed the underlying crimes. We agree. The trial court did not abuse its discretion. Defendant is not entitled to relief on this issue.

*Admissibility of Photographs*

Defendant insists that the trial court abused its discretion in admitting photographs of the victim's body and the victim's bloody shirt. According to Defendant, the images were more prejudicial than probative. The State, on the other hand, argues that Defendant waived the issue for failing to include the photographs in the record on appeal. In the alternative, the State argues that the trial court properly exercised its discretion in permitting the State to publish an exhibit that was already admitted into evidence and in admitting specified autopsy photographs.

Initially, we note that the State correctly points out that the evidence and photographs about which Defendant complains do not appear in the record submitted to this Court on appeal. Ordinarily, a defendant's failure to provide an adequate record for this Court's review of an issue would result in waiver of that issue on appeal. *See* Tenn. R. App. P. 24(b). However, the photographic exhibits are contained in the record from Mr. Nunez's direct appeal. To assist in the resolution of Defendant's case, we have taken judicial notice of that record. *See* Tenn. R. App. P. 13(c); *State v. Lawson*, 291 S.W.3d

864, 869 (Tenn. 2009); *State ex rel Wilkerson v. Bomar*, 376 S.W.2d 451, 453 (Tenn. 1964).

In *State v. Banks*, 564 S.W.2d 947 (Tenn. 1978), our supreme court provided trial courts with guidance for determining the admissibility of relevant photographic evidence. The trial court should consider: the accuracy and clarity of the picture and its value as evidence; whether the picture depicts the body as it was found; the adequacy of testimonial evidence in relating the facts to the jury; and the need for the evidence to establish a prima facie case of guilt or to rebut the defendant's contentions. *Id.* at 951. The admissibility of relevant photographs of victims and the crime scene is within the sound discretion of the trial court, and the court's ruling on admissibility will not be disturbed on appeal absent a showing of an abuse of that discretion. *State v. Carruthers*, 35 S.W.3d 516, 576-77 (Tenn. 2000); *State v. Van Tran*, 864 S.W.2d 465, 477 (Tenn. 1993); *Banks*, 564 S.W.2d at 949. As our supreme court stated in *Carruthers*, the modern trend is to vest more discretion in the trial court's rulings on admissibility. *Carruthers*, 35 S.W.3d at 577 (citing *Banks*, 564 S.W.2d at 949).

With regard to the admissibility of demonstrative evidence, the trial court has discretion to admit relevant evidence. *See* Tenn. R. Evid. 401. However, like all evidence, the probative value must not be substantially outweighed by the danger of unfair prejudice. Tenn. R. Evid. 403.

Here, the State introduced a bag containing the victim's clothing into evidence. There was no objection to the admissibility of this evidence. Later, during the testimony of the crime scene investigator, counsel for the State sought to display the shirt to "show exactly where the holes" were located. Counsel for Mr. Nunez objected and the trial court overruled the objection. Then, during the testimony of the medical examiner, the State sought to introduce autopsy photographs to explain her findings to the jury. The trial court had a jury-out hearing during which the trial court determined that "all" of the photographs had "probative value" and that none of them were overly gruesome in nature. Despite this finding, the trial court only permitted admission of four of the eight proposed photographs, excluding photographs of the "heart and lung." Having reviewed the trial court's analysis regarding the photographs and the shirt, we conclude that the trial court did not abuse its discretion in admitting them into evidence. The photos were relevant for the medical examiner to explain the cause and manner of death and the shirt showed the location of the wounds. The trial court did not abuse its discretion. Defendant is not entitled to relief on this issue.

*Sufficiency of the Evidence*

Lastly, Defendant challenges the sufficiency of the evidence. Specifically, he argues that the evidence was insufficient to "find [him] guilty beyond a reasonable doubt of [second d]egree [m]urder and [f]elony [m]urder." To support his argument, Defendant notes that there was no proof that he had a weapon and therefore he could not have had the intent to commit murder. Additionally, Defendant challenges the remaining two convictions by insisting that there was no evidence of intent to rob the victim and his friend and no evidence that Defendant said anything threatening in nature to the victim or his friend. The State, on the other hand, insists the proof was "more than sufficient to support the verdicts."

Well-settled principles guide this Court's review when a defendant challenges the sufficiency of the evidence. A guilty verdict removes the presumption of innocence and replaces it with a presumption of guilt. *State v. Evans*, 838 S.W.2d 185, 191 (Tenn. 1992). The burden is then shifted to the defendant on appeal to demonstrate why the evidence is insufficient to support the conviction. *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982). The relevant question the reviewing court must answer is whether any rational trier of fact could have found the accused guilty of every element of the offense beyond a reasonable doubt. *See* Tenn. R. App. P. 13(e); *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). On appeal, "the State is entitled to the strongest legitimate view of the evidence and to all reasonable and legitimate inferences that may be drawn therefrom." *State v. Elkins*, 102 S.W.3d 578, 581 (Tenn. 2003). As such, this Court is precluded from re-weighing or reconsidering the evidence when evaluating the convicting proof. *State v. Morgan*, 929 S.W.2d 380, 383 (Tenn. Crim. App. 1996); *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). This Court considers all of the evidence presented at trial, even if Defendant challenges the admissibility of some of the evidence on appeal. *See State v. Thomas Bolton*, No. W2012-02000-CCA-R3-CD, 2014 WL 12653829, at \*10 (Tenn. Crim. App. Jan. 31, 2014) (citing *State v. Longstreet*, 619 S.W.2d 97, 100-01 (Tenn. 1981)), *no perm. app. filed*. Moreover, we may not substitute our own "inferences for those drawn by the trier of fact from circumstantial evidence." *Matthews*, 805 S.W.2d at 779. Further, questions concerning the credibility of the witnesses and the weight and value to be given to evidence, as well as all factual issues raised by such evidence, are resolved by the trier of fact and not the appellate courts. *State v. Pruett*, 788 S.W.2d 559, 561 (Tenn. 1990). "The standard of review 'is the same whether the conviction is based upon direct or circumstantial evidence.'" *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011) (quoting *State v. Hanson*, 279 S.W.3d 265, 275 (Tenn. 2009)).

Here, Defendant was charged with first degree murder. However, Defendant was acquitted of first degree murder and found guilty of the lesser-included offense of second degree murder. Second degree murder is established when a defendant or a person for whom he was criminally responsible knowingly killed the victim. T.C.A. § 39-13-210. A

person "acts knowingly with respect to the result of the person's conduct when the person is aware that the conduct is reasonably certain to cause the result." T.C.A. § 39-11-302(b).

"A person is criminally responsible as a party to an offense, if the offense is committed by the person's own conduct, by the conduct of another for which the person is criminally responsible, or by both." T.C.A. § 39-11-401(a). "A person is criminally responsible for the offense committed by the conduct of another, if . . . [a]cting with intent to promote or assist the commission of the offense, or to benefit in the proceeds or results of the offense, the person solicits, directs, aids, or attempts to aid another person to commit the offense[.]" T.C.A. § 39-11-402(2). Mere presence during the commission of a crime is not enough to support a conviction, but presence and companionship with the perpetrator of the crime before and after the offense was committed are circumstances from which a defendant's participation in the crime may be inferred. *State v. Ball*, 973 S.W.2d 288, 293 (Tenn. Crim. App. 1998). While mere presence is not enough, mere encouragement is sufficient. *Id.* (citing *State v. McBee*, 644 S.W.2d 425, 428 (Tenn. Crim. App. 1982)). It must be proven that a defendant associated with the venture, acted with knowledge that the offense was going to be committed, and shared the criminal intent of the principal. *State v. Macy*, 898 S.W.2d 756, 757 (Tenn. Crim. App. 1994) (citing *Hembree v. State*, 546 S.W.2d 235, 239 (Tenn. Crim. App. 1976)).

Especially aggravated robbery is robbery, as defined in Code section 39-13-401, which is "[a]ccomplished with a deadly weapon" and "[w]here the victim suffers serious bodily injury." T.C.A. § 39-13-403(a) (2014). Robbery is defined as "the intentional or knowing theft of property from the person of another by violence or putting the person in fear. *Id.* § 39-13-401(a) (2014). "A person commits theft of property if, with intent to deprive the owner of property, the person knowingly obtains or exercises control over the property without the owner's effective consent." *Id.* § 39-14-103(a). "A robbery can involve the taking of property from the physical body of a person, in which a person has actual possession of the property, or from a person's immediate presence in the general area in which the victim is located, in which the person has constructive possession of the property." *State v. Tolbert*, 507 S.W.3d 197, 217 (Tenn. Crim. App. 2016) (citations omitted); *see State v. Edmondson*, 231 S.W.3d 925, 928 (Tenn. 2007) ("The words 'from the person of another' indicate that the property is in close physical proximity to the victim when the property is taken.").

In the light most favorable to the State, the evidence is sufficient. The proof showed that Defendant, Mr. Nunez, and Ms. Cruz planned to burglarize the home of the relative of a friend before changing their minds. They attempted to remove a distinctive light from the vehicle in which they were driving before they drove around downtown and approached the victims. Police found a white baseball cap with a black bill, matching the one worn by one of the men in the surveillance video, at Defendant's home, and Defendant attempted

to hide his cell phone.  Mr. Nunez was wearing a face covering, and Defendant exited the car.  The victims were ordered to stop walking and, when they refused, Mr. Nunez shot one of the victims.  The victim died as a result of his wounds.  The fact that Defendant was not the shooter is of no consequence.  The jury was fully instructed on the legal principles describing one's being criminally responsible for the conduct of another person.  There was sufficient evidence to support the convictions.  Defendant is not entitled to relief on this issue.

## *Conclusion*

For the foregoing reasons, the judgments of the trial court are affirmed.


_____
TIMOTHY L. EASTER, JUDGE